# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

YAACOV APELBAUM, a New York resident,
and XRVISION, LTD., a New York corporation,

        Plaintiffs,

v.

STEFANIE LAMBERT, a Michigan resident, and
THE LAW OFFICE OF STEFANIE L. LAMBERT,
PLLC, a Michigan professional limited liability company
and BILL BACHENBERG, a Pennsylvania resident,

        Defendants.

Case No. _____

Hon. _____

**TRIAL BY JURY DEMANDED**

---

BURNS LAW FIRM
John C. Burns*
Attorneys for Plaintiffs
PO Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
F: (314) 282-8136
TBLF@pm.me
* *admission to the Eastern District*
*of Michigan pending*

STUART LAW, PLC
Todd A. Stuart
Attorneys for Plaintiffs
429 Turner Ave. NW
Grand Rapids, MI 49504
Office: 616-284-1658
tstuart@stuartlawplc.com

---

## COMPLAINT AND JURY DEMAND

    COME NOW Plaintiffs YAACOV APELBAUM ("Apelbaum") and XRVISION, LTD. ("XRV"), (collectively, "Plaintiffs"), by and through undersigned counsel, and for their Complaint against STEFANIE LAMBERT ("Lambert"), THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC"), and BILL BACHENBERG ("Bachenberg") (collectively, "Defendants"), state to the Court as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff Yaacov Apelbaum ("Apelbaum") is an expert in cybersecurity. He is the President

and Chief Technology Officer of Plaintiff XRVision, Ltd. At all times relevant hereto, Apelbaum was a resident of the State of New York.

2. Plaintiff XRVision, Ltd. is a New York corporation that specializes in cybersecurity and which maintains its principal place of business in New York, New York.

3. Apelbaum founded XRV in 2015. XRV is a security firm specializing in cutting-edge mobile and wearable AI-based analytics and award-winning intelligent cybersecurity IoT technology. It solves some of the toughest analytics and cyber security challenges that law enforcement and government agencies face.

4. Prior to founding XRV, Apelbaum was the Head of Engineering and CTO for the Safe/Smart City product line in one of the world's leading safe/smart city companies, offering comprehensive and integrated platforms in a wide range of analytics, homeland security, critical infrastructure, OSINT, and smart/safe city spaces.

5. Apelbaum's expertise includes leading R&D and Center of Excellence technology teams in developing and delivering Big Data, video analytics, OSINT engines, IoT, and cyber security solutions for urban surveillance and management, critical infrastructure, border protection, and national security.

6. Defendant Stefanie Lambert is a Michigan attorney.  Lambert is the CEO and owner of Defendant The Law Office of Stefanie L. Lambert, PLLC, and a resident of the State of Michigan.

7. Defendant The Law Office of Stefanie L. Lambert, PLLC, is a Michigan professional limited liability company. At all times, PLLC was acting by or through its authorized agent(s), employee(s), representative(s), or owner(s).

8. Defendant Bill Bachenberg is a resident of the State of Pennsylvania.

9. Pursuant to 28 USC § 1332(a)(1), this Court has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens

of different states.

10.     This Court has personal subject matter jurisdiction over Lambert and PLLC because each is a citizen of Michigan, and because this action arises out of Defendants' transaction of business within Michigan, Defendants' doing or causing an act to be done, or consequences to occur, in Michigan resulting in an action for tort, and/or Lambert's actions as an officer of PLLC.

11.     This Court has personal subject matter jurisdiction over Bachenberg because this action arises out of Bachenberg's agreement(s) with Lambert and PLLC and his transaction of business within Michigan.

12.     Venue is proper in this Court because all or part of the causes of action occurred and/or arose in this district.

## GENERAL ALLEGATIONS

13.     During and in the aftermath of the 2020 Presidential Election, various individuals and organizations made innumerable allegations of election fraud, focusing their accusations on approximately six "battleground" states, including, but not limited to, Michigan and Pennsylvania.

14.     In challenging the propriety of the 2020 Presidential Election in those states, these individuals and organizations alleged that various elections systems, including electronic voting equipment, were compromised, either because the equipment was intentionally configured to favor certain candidates or that the result of the elections was modified via domestic and/or international interference and hacking.

15.     In the immediate aftermath of the 2020 election, various individuals and organizations in Michigan alleged that the Presidential Election in Michigan had been tainted by voter fraud in jurisdictions throughout the state.

16.     Multiple attorneys throughout Michigan, including Defendants Stefanie Lambert and the

Law Offices of Stefanie Lambert, PLLC, also alleged voter fraud occurred during the 2020 Presidential Election in Michigan and in other states.

17.     Defendants Lambert and PLLC promoted multiple claims that election fraud occurred in the 2020 Presidential Election.

18.     Defendants Lambert and PLLC used the public controversy from the 2020 Presidential Election to establish themselves as leading promoters (and profiteers) of election fraud narratives, and earned substantial income by receiving payments from investors across the country, who paid her to participate in election fraud investigations and lawsuits.

19.     One such investor was Defendant Bill Bachenberg.

20.     Upon information and belief, Defendant Bachenberg and Defendants Lambert and PLLC entered into an agreement in which Bachenberg agreed to fund their attorney fees and expenses (including expert cyber and forensic expenses) in various election fraud investigations and lawsuits.

21.     Upon information and belief, Bachenberg also provided a $1 million line of credit for Lambert and PLLC.

22.     While Bachenberg funded Lambert and PLLC's investigations into possible voter fraud in the 2020 Presidential Election, he also **directed** these efforts in great detail, deciding, *inter alia*, which forensic experts to hire and which election controversies to pursue.

23.     Bachenberg funded these investigations because he sought local and national fame, glory, and esteem for discovering and proving voter fraud in the 2020 Presidential Election.

24.     Lambert requested Plaintiffs travel to Michigan for a meeting on prospective cyber and forensic analysis work relating to the 2020 election. Bachenberg promised to pay for Plaintiffs' time, irrespective of whether Plaintiffs were ultimately engaged.

25.     Plaintiffs met Defendants on May 13, 2021, at a meeting at a hotel in Detroit, Michigan.

4

During this meeting, the parties discussed multiple projects relating to intelligence collection, and forensic and cyber analyses of various voting systems used in Antrim County during the 2020 Presidential Election ("Initial Antrim County Projects").

26.     At the May 13, 2021 meeting in Detroit, Defendants retained Plaintiffs for the Initial Antrim County Projects.

27.     On August 4, 2021, Plaintiffs met again with Bachenberg to provide Bachenberg with project updates.

28.     Between May and December of 2021, Plaintiffs' work on the Initial Antrim County Projects resulted in the Defendants paying the Plaintiffs nearly $200,000.

29.     Plaintiffs received one payment for one project on December 29, 2021.

30.     In each and every project, Bachenberg guaranteed payment to Plaintiffs.

31.     In each and every instance, Bachenberg paid the money to Lambert and PLLC, who then paid Plaintiffs.

32.     At all relevant times, Bachenberg operated as the principal funder of these projects, orchestrated the projects, and directed Lambert and PLLC's activities relating to the projects – including determining which vendors should Lambert and PLLC's hire (e.g., Plaintiffs).

33.     Upon information and belief, in early 2022, and at Bachenberg's direction, Lambert and PLLC asked Plaintiffs to travel to Michigan to discuss a new cyber and forensic project related to elections systems in Antrim County ("Project Sampson") which would be funded by Bachenberg.

34.     In a January 12, 2022, meeting, Bachenberg specifically discussed with the Plaintiffs the status of the cyber and forensic services Plaintiff was providing Lambert and PLLC and committed to paying for the work.

35.     On March 8, 2022, Plaintiffs flew to Michigan to meet with Defendants Lambert and PLLC.

The parties signed an agreement for this project. Plaintiffs would not have entered into the contract if Bachenberg had not agreed to fund it and provide payment in advance.

36.     Subsequent to the signing of the agreement relating to one project, the parties entered negotiations for a new project – forensic analysis of elections systems in Fulton County, Pennsylvania ("Fulton County Project").

37.     During these discussions, Lambert and PLLC represented to Plaintiffs that they represented Fulton County, Pennsylvania in an ongoing lawsuit and had been authorized by a Pennsylvania state court to conduct a forensic and cyber analysis of electronic elections systems as part of the discovery in Fulton County, Pennsylvania.

38.     This was a lie.

39.     In fact, while Lambert and PLLC did represent Fulton County, Pennsylvania, they had **not** been authorized to conduct a forensic analysis of Fulton County's elections systems.

40.     Had Plaintiffs known that Defendants Lambert and PLLC misrepresented this fact, Plaintiffs would **not** have entered into an agreement to conduct a cyber and forensic analysis of Fulton County's election systems.

41.     On March 29, 2022, Plaintiffs and Defendants entered into an agreement for Plaintiffs to perform a forensic analysis of Fulton County, Pennsylvania's elections systems, in exchange for $200,000, with the funding to be provided by Bachenberg, although all Defendants guaranteed payment as of the time of contracting.

42.     For this and all forensic work described herein, Bachenberg specifically guaranteed payment to Plaintiffs at the time of contracting.

43.     All of Plaintiffs' forensic services described herein for which payment was guaranteed by Bachenberg were capable of being performed – and, in fact, were performed – in less than one year.

44.     For all of Plaintiffs' forensic services described herein, Bachenberg guaranteed payment at the time of contracting.

45.     All of Bachenberg's guarantees for payment were for work to be performed by Plaintiffs in the future, but across periods less than one year.

46.     Defendants later expanded the scope of the Fulton County Project to include additional cyber analysis functions, such as determining the system hardening state and code analysis, for an additional fee of $350,000, owed to Plaintiffs.

47.     On April 22, 2022, Plaintiffs met with Bachenberg to provide him with a status update on both Project Sampson and the Fulton County project. At which time, Bachenberg reiterated his commitment to pay Plaintiffs, including the expanded scope of work.

48.     On June 4, 2022, the parties met at an airport near Detroit, Michigan to discuss Plaintiffs' findings in their Fulton County analysis.

49.     During that meeting, Plaintiffs informed Defendants that while the elections systems were highly insecure, *there was no evidence that they had been hacked internationally or domestically or were pre-configured to favor one candidate*.

50.     Lambert and PLLC requested that the Plaintiffs write a report stating that there were cheat codes in the software and that there was evidence of remote/local hacking of the elections systems. However, Plaintiffs refused to do this because it was not true.

51.     On or about June 22, 2022, Plaintiffs produced their forensic analysis pursuant to the Fulton County Project agreement.

52.     This report did not find any evidence of election fraud in the 2020 election, and Defendants were furious.

53.     Upon information and belief, on or about June 22, 2022, Defendants indicated that they

intended to unilaterally terminate and alter the terms of the Fulton County project agreement. Defendants demanded that Plaintiffs refund all of the money Plaintiffs had been paid on the Fulton County project.

54.     On or about July 23, 2022, in a sudden about-face, Defendants indicated a sudden interest in performing their obligations under the agreement.

55.     To date, the Plaintiffs still remain unpaid for the work they performed pursuant to the Fulton County agreement.

56.     On or about September 20, 2022, Lambert and PLLC filed a second lawsuit on behalf of Fulton County PA, using a forensic and cyber report produced by a Michigan company called Speckin Forensics, LLC. Both the allegations in the second lawsuit and the supporting forensic report contain fraudulent claims and statements of fact designed to deceive the Court.

57.     Upon information and belief, on or about August of 2022, Defendants Lambert and PLLC began a defamation campaign directed against Plaintiffs.

58.     Upon information and belief, Lambert and PLLC began speaking with Plaintiffs' business relationships, including but not limited to the Pennsylvania Senate, in texts, phone calls, in person, and in other communications, actively and deliberately trying to persuade these business relationships against doing business with Plaintiffs.

59.     Upon information and belief, as reasons to avoid doing business with the Plaintiffs, Defendants Lambert, and PLLC falsely stated that the Plaintiffs had conflicts of interest with her clients and/or her firm, that she would sue the Plaintiffs if they were to be engaged in these relationships, and implicitly that she would take legal action against the relationships themselves if they were to hire Plaintiffs.  To wit:

> "Your office will receive a formal letter from my office today. Yaacov
>
> Apelbaum has a conflict of interest.  He was hired by Fulton County.

He is bound by privilege.  His firm will be sued if he performs any

analysis on Fulton County data for the Senate."

60.     Specifically, upon information and belief, Lambert and PLLC also indicated, in written and verbal communications with representatives of the Pennsylvania Senate, the Wisconsin State Legislature, and the Arizona Senate, that the Plaintiffs were:

    a.   incompetent.

    b.   secretly working as malicious operatives of the federal government; and

    c.   entirely lacking any ability in the fields of cybersecurity and forensic analysis.

61.     At the time Lambert and PLLC made these statements, Plaintiffs and their partners had finalized negotiations as sub-contractors and contractors for the Pennsylvania Senate to perform forensic analyses of various Pennsylvania elections systems, including Fulton County PA.

62.     As a direct result of Lambert and PLLC's conduct described herein, the Pennsylvania Senate terminated its relationship with Plaintiffs.

## COUNT 1 – LIBEL WITH COMMON LAW MALICE
### Brought by Plaintiffs Against Defendants Lambert and PLLC

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Libel with Common Law Malice against STEFANIE LAMBERT ("Lambert") and THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC") (collectively, "Defendants"), state to the Court as follows:

63.     Plaintiff incorporates by reference all prior paragraphs as though fully restated and set forth herein.

64.     As stated more fully above, Defendants have published false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60 above ("Statements").

65.     These Statements are defamatory on their face because they accuse Plaintiffs of knowingly seeking business from parties despite possessing conflicts of interest.

66.     These Statements are further defamatory because they accuse Plaintiffs of being incompetent and providing subpar and low-quality services in their line of work.

67.     These Statements were deliberately made to persuade the Pennsylvania Senate against using Plaintiffs' forensic and intelligence services.

68.     These Statements were and are provably false statements of fact.

69.     These defamatory statements were unprivileged and were made to third parties, including but not limited to members of the Pennsylvania State Senate.

70.     These statements were negligently published by Defendants.

71.     These statements are capable of defamatory meaning because, when read by a reasonable person in context, the aforementioned specific Statements tend to:

     i.   subject Plaintiffs to hatred, ridicule, and contempt;

     ii.  diminish Plaintiffs' standing in the community; and

     iii. denigrate the Plaintiffs' fitness as an intelligence, cyber security, and forensic expert.

72.     These Statements are defamatory per se because they are defamatory on their face without reference to outside material.

73.     Defendants published their false and defamatory Statements as fact.

74.     Defendants did not publish their false and defamatory Statements as mere parody or opinions.

75.     Defendants negligently published these false and defamatory Statements.

76.     Even though the Statements are defamatory per se and actionable irrespective of allegations

10

of special harm, but for Defendants' Statements, Plaintiffs would not have suffered significant pecuniary damages. As a direct and proximate cause of Defendants' defamatory Statements, Plaintiffs' reputations and brand have been damaged in excess of seventy-five thousand dollars, in an amount to be fully determined at trial.

77.     Defendants' statements damaged Plaintiffs' reputation in their profession and with friends.

78.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant, general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, anxiety, lost earnings, and other pecuniary loss.  Among other things, Plaintiffs lost business contracts.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for reputational damages, business losses, and branding damages in such sum in excess of $75,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendant; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; the removal of all of Defendants' defamatory content regarding Plaintiffs from the internet, and for such other and further relief as the Court deems just and proper.

## COUNT 2 – LIBEL WITH ACTUAL MALICE
### Brought by Plaintiffs Against Defendants Lambert and PLLC

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Libel with Common Law Malice against STEFANIE LAMBERT ("Lambert") and THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC") (collectively, "Defendants"), state to the Court as follows:

79.     Plaintiff incorporates by reference all prior paragraphs as though fully restated and set forth herein.

80.     As stated more fully above, Defendants have published false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60 above ("Statements").

81.     These Statements are defamatory on their face because they accuse Plaintiffs of knowingly seeking business from parties despite possessing conflicts of interest.

82.     These Statements are further defamatory because they accuse Plaintiffs of being incompetent and providing subpar and low-quality services in their line of work.

83.     These Statements were deliberately made to persuade the Pennsylvania Senate against using Plaintiffs' forensic and intelligence services.

84.     These Statements were and are provably false statements of fact.

85.     These defamatory statements were unprivileged and were made to third parties, including but not limited to members of the Pennsylvania State Senate.

86.     These Statements were published by Defendants either with knowledge of their falsity or with reckless disregard for their truth.

87.     These Statements are capable of defamatory meaning because, when read by a reasonable person in context, the aforementioned specific Statements tend to:

      i.   subject Plaintiffs to hatred, ridicule, and contempt;

     ii.   diminish Plaintiffs' standing in the community; and

    iii.   denigrate the Plaintiffs' fitness as an intelligence, cyber security, and forensic expert.

88.     These Statements are defamatory per se because they are defamatory on their face without reference to outside material.

89.     Defendants published their false and defamatory Statements as fact.

90.     Defendants did not publish their false and defamatory Statements as mere parody or opinions.

91.     Even though the Statements are defamatory per se and actionable irrespective of allegations of special harm, but for Defendants' Statements, Plaintiffs would not have suffered significant pecuniary damages. As a direct and proximate cause of Defendants' defamatory Statements, Plaintiffs' reputations and brand have been damaged in excess of seventy-five thousand dollars, in an amount to be fully determined at trial.

92.     Defendants acted with willful misconduct, malice, fraud, wantonness, oppression, and/or entire want of care which would raise the presumption of conscious indifference to consequences, and they specifically intended to cause Plaintiffs harm.

93.     Defendants had both political and financial motives for promulgating lies about Plaintiffs.

94.     Defendants' statements damaged Plaintiffs' reputation in their profession and with friends.

95.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered significant, general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, anxiety, lost earnings, and other pecuniary loss.  Among other things, Plaintiffs lost business contracts.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for reputational damages, business losses, and branding damages in such sum in excess of $75,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendant; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; the removal of all of

Defendants' defamatory content regarding Plaintiffs from the internet, and for such other and further relief as the Court deems just and proper.

### COUNT 3 – SLANDER WITH COMMON LAW MALICE
**Brought by Plaintiffs Against Defendants Lambert and PLLC**

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Slander with Common Law Malice against STEFANIE LAMBERT ("Lambert") and THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC"), state to the Court as follows:

96.     Plaintiff incorporates by reference all prior paragraphs as though fully restated and set forth herein.

97.     As stated more fully above, Defendants have made false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60 above ("Statements").

98.     These Statements are defamatory on their face because they accuse Plaintiffs of knowingly seeking business from parties despite possessing conflicts of interest.

99.     These Statements are further defamatory because they accuse Plaintiffs of being incompetent and providing subpar and low-quality services in their line of work.

100.    These Statements were deliberately made to persuade the Pennsylvania Senate against using Plaintiffs' forensic services.

101.    These Statements were also deliberately made to persuade other prospective clients to avoid hiring Plaintiffs as forensic investigators and analysts.

102.    These Statements were and are provably false statements of fact.

103.    These defamatory statements were unprivileged and were made to third parties, including but not limited to members of the Pennsylvania State Senate.

14

104. These statements were negligently published by Defendants.

105. These statements are capable of defamatory meaning because, when read by a reasonable person in context, the aforementioned specific Statements tend to:

    i. subject Plaintiffs to hatred, ridicule, and contempt;

    ii. diminish Plaintiffs' standing in the community; and

    iii. denigrate the Plaintiffs' fitness as an intelligence, cyber security, and as computer forensic expert.

106. These Statements are defamatory per se because they are defamatory on their face without reference to outside material.

107. Defendants issued their false and defamatory statements as fact.

108. Defendants did not issue their false and defamatory statements as mere parody or opinion.

109. Defendants negligently issued these false and defamatory Statements.

110. Even though the Statements are defamatory per se and actionable irrespective of allegations of special harm, but for Defendants' Statements, Plaintiffs would not have suffered significant pecuniary damages. As a direct and proximate cause of Defendants' defamatory Statements, Plaintiffs' reputations and brand have been damaged in excess of seventy-five thousand dollars, in an amount to be fully determined at trial.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for reputational damages, business losses, and branding damages in such sum in excess of $75,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendant; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; the removal of all of Defendants' defamatory content regarding Plaintiffs from the internet, and for such other and further relief

as the Court deems just and proper.

## COUNT 4 – SLANDER WITH ACTUAL MALICE
**Brought by Plaintiffs Against Defendants Lambert and PLLC**

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Slander with Common Law Malice against STEFANIE LAMBERT ("Lambert") and THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC"), state to the Court as follows:

111.    Plaintiff incorporates by reference all prior paragraphs as though fully restated and set forth herein.

112.    As stated more fully above, Defendants have made false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60 above ("Statements").

113.    These Statements are defamatory on their face because they accuse Plaintiffs of knowingly seeking business from parties despite possessing conflicts of interest.

114.    These Statements are further defamatory because they accuse Plaintiffs of being incompetent and providing subpar and low-quality services in their line of work.

115.    These Statements were deliberately made to persuade the Pennsylvania Senate against using Plaintiffs' forensic services.

116.    These Statements were also deliberately made to persuade other prospective clients to avoid hiring Plaintiffs as forensic investigators and analysts.

117.    These Statements were published by Defendants either with knowledge of their falsity or with reckless disregard for their truth.

118.    These Statements were and are provably false statements of fact.

119.    These defamatory statements were unprivileged and were made to third parties, including

but not limited to members of the Pennsylvania State Senate.

120. These Statements are capable of defamatory meaning because, when read by a reasonable person in context, the aforementioned specific Statements tend to:

    i.   subject Plaintiffs to hatred, ridicule, and contempt;

    ii.  diminish Plaintiffs' standing in the community; and

    iii. denigrate the Plaintiffs' fitness as an intelligence, cyber security, and as computer forensic expert.

121. These Statements are defamatory per se because they are defamatory on their face without reference to outside material.

122. Defendants issued their false and defamatory statements as fact.

123. Defendants did not issue their false and defamatory statements as mere parody or opinion.

124. Even though the Statements are defamatory per se and actionable irrespective of allegations of special harm, but for Defendants' Statements, Plaintiffs would not have suffered significant pecuniary damages. As a direct and proximate cause of Defendants' defamatory Statements, Plaintiffs' reputations and brand have been damaged in excess of seventy-five thousand dollars, in an amount to be fully determined at trial.

125. Defendants acted with willful misconduct, malice, fraud, wantonness, oppression, and/or entire want of care which would raise the presumption of conscious indifference to consequences, and they specifically intended to cause Plaintiffs harm.

126. Defendants had both political and financial motives for promulgating lies about Plaintiffs.

127. Defendants' statements damaged Plaintiffs' reputation in their profession, with the public, and with friends.

128. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered

significant, general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, anxiety, lost earnings, and other pecuniary loss.  Among other things, Plaintiffs lost business contracts.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for reputational damages, business losses, and branding damages in such sum in excess of $75,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendant; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; the removal of all of Defendants' defamatory content regarding Plaintiffs from the internet, and for such other and further relief as the Court deems just and proper.

### COUNT 5 – BREACH OF CONTRACT
**Brought by Plaintiffs Against Defendants Lambert, PLLC, and Bachenberg**

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Breach of Contract against STEFANIE LAMBERT ("Lambert"), THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC"), and BILL BACHENBERG ("Bachenberg") (collectively, "Defendants"), state to the Court as follows:

129.    Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein.

130.    As stated above in paragraph, Defendants entered into a contract with Plaintiffs. The terms of that contract required performance by Plaintiffs to Defendants in exchange for compensation.

131.    Before and at the time of contracting, as part of the agreement for Plaintiffs to perform

services to be rendered in the future, Bachenberg guaranteed payment.

132.    Plaintiffs performed fully and completely under the contract.

133.    Defendants have refused to perform their obligations under the contract, causing the instant breach.

134.    Specifically, Defendants have failed to pay Plaintiffs fees under the contract in the amount of five-hundred and fifty thousand dollars ($550,000).

135.    The breach by Defendants has caused significant and serious injury to Plaintiffs.

136.    Plaintiffs have spent a great deal of time and resources – including money – in complying with their obligations under the contract. They remain uncompensated for their work.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for damages in such sum in the amount of $550,000.00; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; and for such other and further relief as the Court deems just and proper.

### COUNT 6 – TORTIOUS INTERFERENCE
**Brought by Plaintiffs Against Defendants Lambert, and PLLC**

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Tortious Interference against STEFANIE LAMBERT ("Lambert"), and THE LAW OFFICE OF STEFANIE L. LAMBERT, PLLC ("PLLC"), (collectively, "Defendants"), state to the Court as follows:

137.    Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein.

138.    Plaintiff had contractual and business relationships and expectancies with prospective

customers as more fully stated above.

139.    Defendants were aware of these relationships and expectancies.

140.    Defendants intentionally and improperly interfered with these relationships and expectancies in the ways described above.

141.    The actions by Defendants were fraudulent, unlawful, unethical, unjustified, and per se wrongful, and were done with malice for the improper purpose of causing the termination or disruption of Plaintiff's relationships and expectancies.

142.    The conduct of Defendants has caused and threatened to cause breaches and disruptions of Plaintiff's relationships and expectancies.

143.    Plaintiff has suffered and will continue to suffer, damages as a result of Defendants' conduct.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for damages in such sum in excess of $550,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; an injunction enjoining Defendants from interfering with Plaintiffs' business relationships and expectancies now and in the future; and for such other and further relief as the Court deems just and proper.

## COUNT 7 – PROMISSORY ESTOPPEL
### Brought by Plaintiffs Against Defendants Lambert, and PLLC

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Tortious Interference against STEFANIE LAMBERT ("Lambert"), and THE LAW OFFICE OF STEFANIE L.

LAMBERT, PLLC ("PLLC") (collectively, "Defendants"), state to the Court as follows:

144.    Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein.

145.    As more fully described above, Defendants made an enforceable promise to Plaintiffs.

146.    This promise by Defendants created reliance and induced Plaintiffs to perform. The promise was that Defendants would ensure that Plaintiffs were fully compensated if they performed the work as requested.

147.    This promise in fact produced reliance by Plaintiffs to perform, and Plaintiffs fully performed the work.

148.    If this promise is not enforced under these circumstances, it would result in a significant and avoidable injustice.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for damages in the sum of $550,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; and for such other and further relief as the Court deems just and proper.

## COUNT 8 – PROMISSORY ESTOPPEL
### Brought by Plaintiffs Against Defendant Bachenberg

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Promissory Estoppel against BILL BACHENBERG ("Bachenberg" or "Defendant") state to the Court as follows:

149.    Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth

herein.

150.     As more fully described above, Defendant Bachenberg made an enforceable promise to Plaintiffs.

151.     As more fully described above, this promise by Defendant created reliance and induced Plaintiffs to perform. The promise was that Defendants would ensure that Plaintiffs were fully compensated if they performed the work as requested.

152.     This promise in fact, produced reliance by the Plaintiffs to perform, and Plaintiff fully performed the work.

153.     If this promise is not enforced under these circumstances, it will result in a significant and avoidable injustice.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendants for damages in the sum of $550,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; and for such other and further relief as the Court deems just and proper.

## COUNT 9 – QUANTUM MERUIT / UNJUST ENRICHMENT
### Brought by Plaintiffs Against Defendant Bachenberg

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV") (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Quantum Meruit/ Unjust Enrichment against BILL BACHENBERG ("Bachenberg" or "Defendant") state to the Court as follows:

154.     Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein.

155.    As stated more fully above, Bachenberg asked Plaintiffs to perform forensic analysis services, and also actively worked with and directed Defendants Lambert and PLLC to ensure that Plaintiffs were retained to perform said services.

156.    Bachenberg wanted Plaintiffs to perform their forensic services because he wanted to receive local and national glory and esteem for having uncovered massive voter fraud in the 2020 election.

157.    As stated more fully above, Plaintiffs performed the forensic analysis services as requested by Defendants.

158.    Bachenberg benefitted from the expert forensic services provided by Plaintiffs.

159.    Plaintiffs were not compensated for the services they provided.

160.    Plaintiffs are owed in excess of $550,000 in fees for the services they provided to Defendant.

161.    It is inequitable to allow Bachenberg to retain the benefit of Plaintiffs' services while Plaintiffs remain totally uncompensated.

162.    Upon information and belief, the existence of a contract between the Plaintiffs and Defendants is disputed in part or in whole.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment against Defendant Bachenberg for damages in the sum of $550,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; and for such other and further relief as the Court deems just and proper.

## COUNT 10 – QUANTUM MERUIT / UNJUST ENRICHMENT
### Brought by Plaintiffs Against Defendants Lambert and PLLC

COME NOW Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRV")

(collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint alleging Quantum Meruit/ Unjust Enrichment against STEFANIE LAMBERT ("Lambert") and THE LAW OFFICES OF STEFANIE LAMBERT, PLLC ("PLLC") (collectively, "Defendants") state to the Court as follows:

163.    Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein.

164.    As stated more fully above, Defendants asked Plaintiffs to perform forensic analysis services, and also actively worked with Defendant Bachenberg to ensure that Plaintiffs were retained to perform said services.

165.    Defendants wanted Plaintiffs to perform their forensic services because they wanted to receive local and national glory and esteem for having uncovered massive voter fraud in the 2020 election, and because they wanted to continue to receive extremely lucrative legal representation contracts to hunt for voter fraud.

166.    As stated more fully above, Plaintiffs performed the forensic analysis services as requested by Defendants.

167.    Plaintiffs are owed in excess of $550,000 in fees for the services they provided to Defendants.

168.    Defendants benefitted from the expert forensic services provided by Plaintiffs.

169.    Plaintiffs were not compensated for the services they provided.

170.    It is inequitable to allow Defendants to retain the benefit of Plaintiffs' services while Plaintiffs remain totally uncompensated.

171.    Upon information and belief, the existence of a contract between the Plaintiffs and Defendants is disputed in part or in whole.

WHEREFORE, Plaintiffs pray this Honorable Court make and enter its Order and Judgment

against Defendants for damages in the sum of $550,000.00 as is fair, reasonable, and certain, to be determined at trial; punitive damages in an amount to be determined at trial; that all costs be taxed to Defendants; pre and post-judgment interest; that Plaintiffs recover their reasonable attorney's fees; trial by jury on all issues so triable; and for such other and further relief as the Court deems just and proper.

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request the Court enter judgment against Defendants Stefanie Lambert, The Law Offices of Stefanie Lambert, PLLC, and Bill Bachenberg, jointly and severally, as follows:

A.  Compensatory damages in the amount of $5,000,000.00;

B.  Compelling specific performance on the various contracts, amounting to an award of $550,000.00 to Plaintiffs;

C.  Punitive damages in the amount of $5,000,000.00;

D.  Prejudgment interest on the principal sum awarded by the Jury at the maximum rate allowed by law;

E.  Postjudgment interest at the maximum rate allowed by law;

F.  Costs and other recoverable amounts as allowed by law;

G.  Such other and further relief as the Court deems just and proper.


**TRIAL BY JURY IS DEMANDED**


Dated: July 18, 2023

Signature of Counsel on Next Page

Respectfully submitted,

BURNS LAW FIRM

/s/ *John C. Burns*
John C. Burns*
P.O. Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
F: (314) 282-8136
john@burns-law-firm.com

*Admission to the Eastern District of
Michigan Pending*

STUART LAW, PLC
Todd A. Stuart
429 Turner Ave. NW
Grand Rapids, MI 49504
Office: 616-284-1658
tstuart@stuartlawplc.com

*Attorneys for Plaintiffs*