**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

YAACOV APELBAUM, a New York resident,
and XRVISION, LTD., a New York
corporation,

        Plaintiffs,

v.

STEPHANIE LAMBERT, a Michigan resident,
and THE LAW OFFICE OF STEPHANIE L
LAMBERT, PLLC, A Michigan professional
limited liability company, and BILL
BACHENBERG, a Pennsylvania resident,

        Defendants.

Case No. 2:23-cv-11718

Hon. Robert J. White

---

**BURNS LAW FIRM**
John C. Burns
Attorneys for Plaintiffs
PO Box 191250
St. Louis, Missouri 63119
(314) 329-5040
TBLF@pm.me


**STUART LAW PLC**
Todd A. Stuart (P70187)
Attorneys for Plaintiff
2851 Charlevoix Dr SE, STE 207
Grand Rapids, MI 49546
Mailing: 5557 28th Street SE
STE B 328, Grand Rapids, MI 49512
(616) 209-9270
tstuart@stuartlawplc.com

**THE TICKTIN LAW GROUP**
Peter Ticktin, Esquire
David L. Perry II , Esquire
Fla Bar No. 1045902
THE TICKTIN LAW GROUP
270 SW Natura Avenue
Deerfield Beach, Florida 33441
Serv514@LegalBrains.com
Serv608@LegalBrains.com
Telephone: (561) 232-2222
*Attorneys for Defendants Bill Bachenberg, Stefanie Lambert, and The Law Office of Stefanie L. Lambert, PLLC*

---

**PLAINTIFFS' VERIFIED RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT**

1

Defendants ask the Court to disregard the parties'[1] valid, mutually assented to settlement agreement to dismiss Defendant Bachenberg, while enforcing an agreement that never existed. Defendants have no evidence of the latter, while Plaintiffs have ample evidence of the former. The parties, whether by phone or email, never discussed or negotiated the resolution of the **$10,000,000.00** *defamation claims* against Stefanie Lambert and The Law Office of Stefanie L. Lambert, PLLC ("Lambert Defendants"). The parties only discussed resolution of the roughly **$500,000** *contract claims* against Bachenberg,[2] and Plaintiffs provided the Court with evidence that this was Bachenberg's counsel's explicit understanding at the time of contracting. *See* Exhibit 1. The draft order of dismissal prepared by Bachenberg's counsel solely referenced the half million dollar demand for the contract claims – but not the monetary demands related to the defamation claims – further evidencing the parties' intent. And this makes perfect sense, because Bachenberg had nothing to do with the Lambert Defendants' defamatory statements and other tortious conduct.

Bachenberg offered Plaintiffs $500,000 to 'satisfy the demand' of the contract claims and dismiss the suit against him. Plaintiffs accepted that offer; Bachenberg paid the money; and Plaintiffs have filed a motion to dismiss Bachenberg, which he now opposes. With the instant motion, Defendants now attempt to retroactively force additional consideration from Plaintiffs and deprive them of both the benefit of their bargain as well as the remedies sought relating to the Lambert Defendants. As the evidence shows, the parties did not enter into a global settlement, and the Court should deny Defendants' motion to enforce an agreement Plaintiffs never made.

---

[1] The settlement agreement was negotiated by and between counsel for Defendant Bachenberg and Plaintiffs' counsel.

[2] As discussed more fully below, the contract claims were brought jointly against Bachenberg and the Lambert Defendants.

2

**INTRODUCTION**

Plaintiffs brought three (3) claims against Defendant Bachenberg, including breach of contract, promissory estoppel, and quantum meruit/ unjust enrichment.[3] (ECF 1, at 18-25). Plaintiffs brought the *same* claims against the Lambert Defendants, for the *same* conduct (hereafter "Contract Claims"). *Id*. **Critically**, Plaintiffs also brought five (5) additional claims against the Lambert Defendants that were **not** also brought against Defendant Bachenberg, including *defamation* and *tortious interference*[4] (for simplicity, "Defamation Claims"). *Id*., at 9-20.

The Contract Claims all related to promises Defendants made to Plaintiffs for the performance of cyber forensic services, and Plaintiffs demanded $550,000 for the contracted work performed. *Id*., at 25.

In contrast, the Defamation Claims – claims brought **solely** against the Lambert Defendants – relate to tortious *statements* and *conduct* by the Lambert Defendants which resulted in Plaintiffs losing business contracts and incurring reputational harm. Plaintiffs demanded a total of **$10,000,000.00** in damages for the Defamation Claims brought against the Lambert Defendants. *Id*., at 25.

On May 27, 2025, Mike Smith, counsel only for Defendant Bachenberg, filed a motion to withdraw from representing Bachenberg. (ECF 45). On June 2, 2025, attorney Tom Siver entered

---

[3] Count V is a claim for breach of contract brought jointly against all Defendants. Count VIII and IX are solely against Defendant Bachenberg for promissory estoppel and quantum meruit/ unjust enrichment, respectively. Counts VII and X are solely against the Lambert Defendants for promissory estoppel and quantum meruit / unjust enrichment, respectively.

[4] Counts I and II, solely against the Lambert Defendants, are libel (common law malice), libel (actual malice. Counts III and IV are for slander, and count VI is for tortious interference.

3

his "limited" appearance solely on behalf of Bachenberg. (ECF 49). Importantly, the Lambert Defendants did not enter this case until after all of the facts relevant to the instant motion occurred.[5]

At 4:43 p.m.[6] on Wednesday, June 11, 2025, Siver emailed Burns with a draft order (stating that "Defendant Bill Bachenberg has satisfied the $500,000 demand") ending the case as to Bill Bachenberg. *See* Exhibit 2. At 5:48 p.m., Burns called Siver to confirm the terms: the case would be settled as to Bachenberg in exchange for Bachenberg paying Plaintiffs $500,000. Siver

---

[5] Importantly, prior to June 18, 2025, when attorney David Perry entered his appearance, no person or attorney entered their appearance on behalf of the Lambert Defendants, with the latter having spent the **entire** lawsuit dodging service of numerous summonses and subpoenas when dozens of service attempts were made on residences, former residences, and their business office. In fact, the Lambert Defendants *were well aware of the lawsuit*, gave statements to the media about the lawsuit stating that they had not yet been served, but that they were "chomping at the bit" and looking forward to being served and fighting the case in court (*see* ECF 8-2, at 10-11), refused to allow their criminal defense attorney as of 2023 (Mike Smith) to accept service of the summons (*see* ECF 6 – motion for alternative service, at ¶ 19 ), refused to accept service of the subpoena when Plaintiffs' counsel confronted their successor criminal defense attorney in May of 2025 (*see* ECF 50-3), refused confirm their home address when Plaintiffs' counsel confronted their successor criminal defense attorney in May of 2025 (ECF 50-4 at 2 – texts with counsel Dan Hartman), refused to provide their phone number when Plaintiff's counsel confronted their successor criminal defense attorney in May of 2025 (*id*.), contacted at least one witness (Jason Rybak) on the day of his deposition and encouraged the witness not to comply with a federal subpoena (*see* ECF 50-5 at 2), clearly was coordinating with Defendant Bachenberg in the background enough to know that Bachenberg had sought to terminate his former lawyer, Mike Smith, and Lambert communicated this to witness Rybak (*see* ECF 50-5 and 50-6 at 2) and continued to dodge service as recently as then end of May, 2025, when Plaintiffs' process server could observe Lambert through the window of her home and could hear her instructing her children to hide and not to open the door (*see* ECF 50-2 at 2). *See generally* ECF 50, motion for alternative service, and exhibits thereto.

[6] All times Eastern Standard.

confirmed the terms and stated that "Bill wants to be out of the case immediately. He has a heart condition, and this case is aggravating it." **These were the simple, straightforward, material terms to the agreement.** The claims against the Lambert Defendants were never discussed or negotiated, and no agreement was made in any way relating to them.

During this same call, Burns pointed out that the draft dismissal document would need edits, including typos in the caption, signature block (erroneously conflating Plaintiffs' counsel (John C. Burns) with former defense counsel (Mike Smith) to become "John C. Smith"), and the title of the order, to clarify that the order only dismissed Bachenberg. Siver agreed and Burns then called Plaintiffs – who were on holiday overseas at the time – to discuss the settlement terms and receive settlement authorization. At 6:51 p.m., having successfully received authorization, Burns emailed Siver and accepted the agreement to dismiss Bachenberg. Bachenberg was eager to be dismissed as soon as possible, and the next day, Siver bombarded Plaintiffs' counsel with phone calls and emails pressuring Plaintiffs to file the stipulation for dismissal. Burns confirmed that this would be done as soon as payment to his firm's trust account cleared the bank. Because of the size of the wire transfer, the bank held onto the funds for an additional day.

By midday on Friday, June 13, 2025, the funds had cleared the bank. As discussed in the original phone call with Siver, and in subsequent emails, basic edits needed to be made to the dismissal document because of clerical errors and for clarity. Accordingly, Todd Stuart's office (co-counsel for Plaintiffs) circulated the revised draft order during the afternoon on June 13, 2021. *See* Exhibit 3 at 1. Minutes later, Siver responded, demanding edits. SIGNIFICANTLY, Siver **admitted** that the settlement between Bachenberg and Plaintiffs only contemplated dismissing Bachenberg – and not the Lambert Defendants:

5

> **…this order is only for Bill and he doesn't speak for attorney Lambert and doesn't need to make reference to her case. Therefore please immediately make the changes and forward for approval…**

*Id.*, at 2 (emphasis added).

Additional drafts were then batted back and forth, prompting Plaintiffs' counsel to call Siver that afternoon. Siver stated he needed to speak with Bachenberg to get final approval of the order language and then call Plaintiffs' counsel back. This struck Plaintiffs' counsel as odd, and no call ever came. Later that afternoon, Siver emailed Plaintiffs' counsel stating he was having difficulty reaching his client. *See* Exhibit 4. On Monday and Tuesday, June 16-17, 2025, Plaintiffs' counsel exchanged emails with Siver trying to set up a call, but this never materialized. Instead, attorney David Perry entered his appearance on behalf of Bachenberg and the Lambert Defendants on Wednesday, June 18, 2025. (ECF 51). During a status conference on June 23, 2025, attorney Siver informally announced to the Court that he would no longer be representing Defendant Bachenberg, but that attorneys Perry and Ticktin would be succeeding him.

## **LEGAL STANDARD**

Federal courts retain inherent power to enforce settlement agreements relating to litigation pending before that court. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988). This is so, even if the agreement was not reduced to writing. *Id.*; *see also RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) ("The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement."). Settlement agreements, as a type of contract, are governed by the principles of contract law. *See Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992); *see also Echols v. Nimmo*, 586 F. Supp. 467, 469

6

(W.D. Mich. 1984) ("Where there is a dispute as to the existence of a settlement agreement, general contract principles govern."). Under Michigan law, settlement agreements are governed by legal principles applicable to the construction and interpretation of contracts. *See Walbridge Aldinger Co. v. Walcon Corp.*, 207 Mich. App. 566, 571 (1994). Contract principles dictate that a settlement agreement binds parties, absent a showing of mistake, fraud, or unconscionable advantage. *See Plamondon v. Plamondon*, 230 Mich. App. 54, 56 (1998).

A valid contract requires mutual assent on all essential terms. *Eerdmans v. Maki*, 226 Mich. App. 360 (1997). The parties must have a meeting of the minds on all essential terms in the contract. *See Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 453 (2006). " 'A meeting of the minds is judged by an objective standard, looking to the express words of the parties **and their visible acts**, not their subjective states of mind.' " *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. 543, 548 (1992) (quoting *Stanton v. Dachille*, 186 Mich. App. 247, 256 (1990)) (emphasis added). Settlements fairly made on the record should not be upset because of any subjective hesitation or secret reservation on the part of either party. *See Meyer v. Rosenbaum*, 71 Mich. App. 388, 393 (1976). "[O]nly the existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989).

## **ARGUMENT**

Defendants argue the parties entered into a global settlement agreement that resolved all claims against all parties. But, there is no evidentiary support for this. On the contrary, the evidence – especially attorney Siver's June 13, 2025 email ("…this order is **only** for Bill and **he doesn't speak for attorney Lambert and doesn't need to make reference to her case**.

7

Therefore please immediately make the changes and forward for approval…")[7](*see* Exhibit 1) – decisively establishes that the claims against the Lambert Defendants were **never part of the settlement agreement**. *Cf., Lowman v. Gen. Motors Corp.*, No. CV 20-12515, 2021 WL 6618766, at *4 (E.D. Mich. Nov. 19, 2021), report and recommendation adopted, No. 20-CV-12515, 2021 WL 6112095 (E.D. Mich. Dec. 27, 2021) (citing *Kamalnath v. Mercy Mem. Hosp. Corp.*, 194 Mich. App. at 548 ("A meeting of the minds is judged by an objective standard, **looking to the express words of the parties** and **their visible acts**, not their subjective states of mind") (emphasis added). Absolutely nothing in the string of emails discusses ending the lawsuit for anyone except for Bachenberg, and counsel for Bachenberg and Plaintiffs never discussed resolving the claims against the Lambert Defendants. Siver's email could not be more clear: the dismissal agreed to in the settlement agreement only pertained to Bachenberg ("*only for Bill*"). Perhaps Attorney Siver misunderstood his client's desires, or perhaps his client had a change of heart subsequent to contracting. But the Court must look to counsel's words and acts. The fact remains that the deal that was struck between the parties only contemplated Bachenberg's dismissal, and Siver's email conclusively proves it.

Further, the damages demanded for the Contract Claims ($550,000) and the Defamation Claims ($10,000,000.00) are wildly different. It's obvious from the face of Bachenberg's initial draft dismissal order that Bachenberg was only negotiating the dismissal of Bachenberg's Contract Claims: "This Court finds that Defendant Bill Bachenberg has satisfied the $500,00.00 [sic] demand, and this case is now closed and dismissed with prejudice." *See* Exhibit 2. The distinction regarding the "$500,000 demand is important," because that is nearly the amount Plaintiffs demanded to resolve the Contract Claims. The draft order is noteworthy for what it does not

---

[7] Emphasis added.

mention: the $10,000,000.00 demand relating to the Defamation Claims against the Lambert Defendants (*but not Bachenberg*). The draft order states that Bachenberg satisfied the demand against him – but not the monetary demands solely pertaining to the Lambert Defendants. The evidence shows the parties did not enter into a global settlement, and the Court should deny Defendants' motion to enforce an agreement Plaintiffs never made.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to enforce settlement.

## VERIFICATION

The undersigned swear or affirm under penalty of perjury that the foregoing is true and correct to the best of their knowledge.

Dated: July 7, 2025            Signed: */s/ John C. Burns*    */s/ Todd A. Stuart*

                                                Respectfully Submitted

/s/ John C. Burns
John C. Burns
Attorneys for Plaintiffs
PO Box 191250
St. Louis, Missouri 63119
(314) 329-5040
TBLF@pm.me

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 7, 2025, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ John C. Burns*