UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAACOV APELBAUM, et al.,

      Plaintiffs,

v.

STEFANIE LYNN LAMBERT, et al.,

      Defendants.

Case No. 23-cv-11718

Honorable Robert J. White

---

**ORDER (1) GRANTING MOTION TO VACATE DEFAULT, (2) DENYING MOTION TO HOLD FUNDS, AND (3) GRANTING IN PART AND DENYING IN PART MOTION TO AMEND SCHEDULING DEADLINES**

---

Yaacov Apelbaum and his cyber security firm, XRVision, Ltd. (Plaintiffs), commenced this diversity breach of contract and libel action against Stephanie Lynn Lambert, her law office,[1] and Bill Bachenberg, after Apelbaum refused to opine that election equipment in Pennsylvania had been hacked or tampered with during the 2020 general election.  Before the Court is (1) Plaintiffs' motion to amend scheduling deadlines (ECF No. 44), Lambert Defendants' motion to vacate a Clerk's entry of default (ECF No. 61), and Bachenberg's motion to hold settlement funds pending appeal (ECF No. 73).

---

[1] Lambert and her firm are collectively referred to as Lambert Defendants.

The parties fully briefed the motion to vacate, but no defendant responded to Plaintiffs' motion.  Plaintiffs responded to Bachenberg's motion, but he did not file a reply.  The Court will decide the motions without oral argument pursuant to Local Rule 7.1(f)(2).  For the reasons explained below, the Court (1) grants Lambert Defendants' motion, (2), denies Bachenberg's motion, and (3) grants in part and denies in part Plaintiffs' motion.

## I.    Background

On July 18, 2023, Plaintiffs filed a verified complaint against Defendants, asserting claims of libel, slander, breach of contract, tortious interference, promissory estoppel, and unjust enrichment. (ECF No. 1, PageID.9-25).  Bachenberg answered on November 22, 2023. (ECF No. 9).  On December 12, 2023, after Plaintiff's unsuccessful efforts to serve Lambert Defendants, the Court granted Plaintiffs' motion for alternate service. (ECF No. 10).  Plaintiffs filed a proof of alternate service on January 5, 2024. (ECF No. 11)  The Court accepted Plaintiff's service and issued numerous show-cause orders in February 2024 regarding Lambert Defendants' continued lack of response to the lawsuit. (ECF Nos. 12, 14).  On February 27, 2024, the Clerk entered default against Lambert Defendants for their failure to plead or otherwise defend in this action. (ECF No. 16).

2

However, the Court denied, albeit without prejudice, Plaintiffs' request to enter a default judgement against Lambert Defendants. (ECF No. 33). The Court stated as follows:

> Lambert [Defendants] were properly served with the summons and complaint, and neither defendant is an infant, incompetent, or serving in the military. As a result of the entry of default, the factual allegations in the complaint may be established as true. Plaintiffs have thus generally established their entitlement to relief against Lambert [Defendants] based upon the verified complaint and additional supporting materials.

(ECF No. 33, PageID.295).

But the Court concluded that even though Lambert Defendants were "in default," it was "premature to enter a default judgment against them" because Bachenberg continued to defend against Plaintiffs' claims and the case potentially involved joint and several liability among the various defendants. (ECF No. 33, PageID.295-97).

In April 2025, with discovery due by June 8, 2025, the court referred the case for a settlement conference with Magistrate Judge Anthony P. Patti. (ECF Nos. 41-43). Plaintiffs then filed their motion to amend the scheduling order on May 22, 2025. (ECF No. 44). The following week, Bachenberg's attorney filed a motion to withdraw as counsel. (ECF No. 45). Then, in June 2025, Plaintiffs filed (1) a motion for alternate service concerning discovery sought from Lambert Defendants (ECF No. 50) and (2) a motion to dismiss Bachenberg with prejudice pursuant to a settlement agreement between him and Plaintiffs (ECF No. 52).

Around this time, attorney David Lawrence Perry II filed an appearance to represent both Bachenberg and Lambert Defendants.[2] (ECF No. 51). This was the first time in this case anyone appeared for Lambert Defendants. And on June 21, 2025, Perry filed a motion to enforce the aforementioned settlement agreement on behalf of all Defendants. (ECF No. 54). Perry, on July 1, 2025, also filed the motion to vacate the Clerk's entry of default on behalf of Lambert Defendants. (ECF No. 61).

Concerning the parties' separate motions with respect to settlement, it was undisputed that Bachenberg agreed to pay (and has in fact paid) $500,000 in exchange for dismissal of Plaintiffs' claims, but the parties disputed whether the agreement required dismissal of claims against Bachenberg only, or those against Lambert Defendants as well. Following a hearing, on July 15, 2025, the Court (1) granted Plaintiff's motion to dismiss Bachenberg with prejudice pursuant to the parties' settlement agreement; (2) directed the Clerk to terminate Bachenberg as a party; (3) denied Defendants' motion to enforce the agreement "so as to dispose of the claims asserted against not only Bachenberg, but those asserted against Lambert [Defendants] as well"; and (4) directed Plaintiffs' counsel to temporarily retain the

---

[2] On June 30, 2025, the Court entered a stipulated order substituting Perry for Bachenberg's prior counsel. (ECF No. 58). The motion to withdraw (ECF No. 45) was therefore denied as moot. Perry remains counsel of record for all Defendants at this time.

settlement funds in an IOLTA account "pending the Court's decision on the Lambert [D]efendants' impending motion regarding the disposition of those funds."[3] (ECF No. 67, PageID.658-59).   The Court also denied Plaintiffs' motion for alternate service as moot because Lambert Defendants acknowledged service at the hearing. (ECF No. 68).

The Court concluded that the settlement agreement at issue was only intended to cover claims against Bachenberg, not those against Lambert Defendants as well. On July, 28, 2025, Bachenberg filed the motion to hold settlement funds pending appeal of the Court's order resolving the settlement dispute and dismissing claims against Bachenberg only. (ECF No. 73).   This appeal is ongoing.

## II.    Analysis

### A.    Lambert Defendants' Motion to Vacate

A district court should set aside default upon a showing of "good cause." Fed. R. Civ. P. 55(c).   "In determining whether good cause exists, the district court must consider: (1) whether culpable conduct of the defendant led to the default, (2) whether the defendant has a meritorious defense, and (3) whether the plaintiff will be prejudiced." *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (cleaned up).   "Although all three factors must be considered in ruling on

---

[3] Lambert Defendants never filed any such motion, but Bachenberg appealed the Court's order and filed his motion to hold the settlement funds. (ECF Nos. 73-74).

a motion to set aside an entry of default, when a defendant has a meritorious defense and the plaintiff would not be prejudiced, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *Id.* (cleaned up).

This standard is "extremely forgiving to the defaulted party and favor[s] a policy of resolving cases on the merits instead of on the basis of procedural missteps." *Id.* at 322; *see also O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003), abrogated on other grounds by *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) (district courts have "considerable latitude" to grant relief from a default). Further, "if service of process was not proper, the court must set aside an entry of default." *O.J. Distributing*, 340 F.3d at 352.

### 1. Service was Proper

The Court, in its order granting Plaintiffs' motion for alternate service, first determined that Plaintiff had exhausted both federal and state procedures for serving Lambert Defendants. According to Plaintiffs, they had attempted personal service on Lambert, both individually and as the registered agent for her firm, at four different addresses identified as Lambert's potential home address. (ECF No. 10, PageID.173-75). They also asked Bachenberg's initial counsel, "who was believed to [also] represent [Lambert] Defendants," to accept service on Lambert behalf, but he declined. (ECF No. 10, PageID.174). And Plaintiffs attempted service at the

address registered to Lambert's firm, "but a security guard informed the process server that Defendant Lambert's 'name had been removed from the building's registry some time ago.'" (ECF No. 10, PageID.175 (quoting ECF 6, PageID.43)). The Court, therefore, ordered as follows:

> Although Defendant Lambert's address is unclear due to her various names and possible residences, the Court will permit service by the following method: (1) leaving copies of the summons, complaint, and this order with an adult at each of the four addresses associated with Defendant Lambert; (2) mailing copies of the summons, complaint and this order to each of the four locations; and (3) mailing copies of the summons, complaint, and this order to attorney Michael J. Smith [Bachenberg's prior counsel in this case].

(ECF No. 10, PageID.175).

On January 5, 2024, the Court's deadline to file proof of service in accordance the order for alternate service, Plaintiff filed a "notice of compliance and attempted compliance" with the Court's order. (ECF No. 11, PageID.177). The filing stated that Plaintiffs successfully mailed the service documents to Smith and the four possible addresses for Lambert. Plaintiffs also personally served an adult at one of these four addresses, in Macomb, but they were unable to do so at the other three despite six attempts at each. (ECF No. 11, PageID.178-79).

Lastly, in its February 16, 2024 show-cause order, the Court stated as follows:

> Plaintiffs timely filed a notice and proof of several attempts at alternate service. Plaintiffs represented that they "successfully served an adult at one residence but were unsuccessful at serving an adult at the remaining three residences, despite six [] separate service attempts at

each residence."  Plaintiffs successfully mailed all service materials to all five addresses.

The Court believes that Plaintiffs' alternate service actions are "reasonably calculated to give [Defendant Lambert] actual notice of the proceedings." Mich. Ct. R. 2.105(J)(1).[4]  And Plaintiffs complied with the Court's order allowing alternate service by attempting to serve Defendants a total of thirty-nine times before January 5, 2024, the date specified in the Court's order.  The Court will therefore accept proof of service as of the date of Plaintiffs' notice, January 5, 2024.

(ECF No. 12, PageID.217-18 (citations omitted; alterations in original)).

Lambert Defendants now argue that service was improper because Plaintiff only personally served an adult at one of Lambert's possible addresses instead of at all four, as directed by the order for alternate service. (ECF No. 61, PageID.548-50). They notably assert that "the issue with serving Stefanie Lambert was not one of her own doing, rather it was by the Plaintiffs' failure to identify Stefanie Lambert's

---

[4] Proper service in this case could be effectuated under either state or federal rules. *See* Fed. R. Civ. P. 4(e), (h).  And Michigan's court rules, specifically Mich. Court R. 2.105(J)(1), grants courts discretion, "[o]n a showing that service of process cannot reasonably be made," to "permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." *See also Citibank, N.A. v. Interior Lifestyles, Inc.*, No. 19-268, 2019 U.S. Dist. LEXIS 246529, at *3 (W.D. Mich. May 24, 2019) (relying on Mich. Court R. 2.105 to grant the plaintiff's motion for alternate service). Importantly, this standard comports with the basic requirements of due process. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) ("The Due Process Clause requires every method of service to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (cleaned up).

residential address." (ECF No. 61, PageID.549).   Lambert relatedly avers that neither she nor her firm, nor anyone authorized to accept service on their behalf, was ever served with a summons and complaint in this case.   And Lambert states that she (1) never lived at the Macomb address where personal service was allegedly effectuated and (2) does not know the individual referenced in the process server's affidavit. (ECF No. 61-1, PageID.561-63).

The Court concludes that service was proper.   Importantly, even accepting that Lambert never lived at the Macomb address and could not be served there, Lambert Defendants do not adequately address Plaintiffs successfully mailing the service documents to the three other addresses, as well as to attorney Smith.

As it relates to Lambert's address, her affidavit (and Lambert Defendants' argument) is tellingly silent regarding where Lambert has resided during this action and whether any of the three other addresses were correct.   And Lambert's base denial of ever receiving service does not overcome Plaintiffs' proof of proper service via mail at the various addresses. *See, e.g., Audi AG & Volkswagen of Amer., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1018 (E.D. Mich. 2002) (where affidavit of process server asserted that he served the defendant personally, the defendant's declarations that he was out of town and found the package on his doorstep upon return were "bare allegations [and], without more, were insufficient to establish that service was not properly effected"); *Nolan v. City of Yonkers*, 168 F.R.D. 140, 144 (S.D.N.Y.

1995) ("The mere denial of receipt of service . . . is insufficient to overcome the presumption of validity of the process server's affidavit.") (citations omitted).

Regarding Smith, the Court accepts that he never appeared or was authorized to accept service on Lambert Defendants' behalf here.  So his receipt of service documents could not have been proper under the typical requirements of Fed. R. Civ. P. 4.  However, alternate service in this case only needed to provide notice reasonably calculated, under all the circumstances, to apprise Lambert Defendants of the pendency of the action and afford them an opportunity to present their objections. Critically, Lambert herself avers that Smith represented her in other matters and "agreed to file a Motion to Dismiss in" this case. (ECF No. 61-1, PageID.562). Lambert was therefore at least aware of and communicating with Smith about this case, even if he technically did not represent Lambert Defendants and was unauthorized under general service procedures to accept service on their behalf here.

Given the foregoing, the Court concludes that Plaintiffs' successful mailing of the service documents to the three remaining potential addresses of Lambert, and to an attorney with whom Lambert was communicating about this case, sufficiently complied with the rules for alternate service and basic requirements of due process, such that Lambert Defendants received notice reasonably calculated under the circumstances to appraise them of this case and provide an opportunity to defend. The Court therefore declines to set aside the default on the basis of improper service.

### 2.    Meritorious Defense

"Consistent with [the] permissive stance in setting aside defaults, a defense is meritorious if 'there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.'" *$22,050.00 U.S. Currency*, 595 F.3d at 326 (citation omitted). "[E]ven conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 843 (6th Cir. 2011) (quoting *$22,050.00 U.S. Currency*, 595 F.3d at 326).

Plaintiffs do not contest this issue, and the Court concludes that Lambert Defendants have met the minimal burden to establish a meritorious defense. This factor weighs in favor of setting aside the default.

### 3.    Prejudice

Neither delay alone nor increased litigation costs suffice to establish that a plaintiff will be prejudiced by setting aside a default. *Dassault Systemes*, 663 F.3d at 842. "Instead, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Id.* (quotation marks and citation omitted).

Plaintiffs make no argument regarding any prejudice were default set aside, let alone the specific type required here. Absent such a showing, this factor also weighs in favor of setting aside the default.

### 4.      Lambert Defendants' Conduct

"To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Dassault Systemes*, 663 F.3d at 841.

Here, there is indeed evidence that Lambert Defendants were culpable, if not willful, in failing to plead or otherwise defend in this case, particularly considering Plaintiffs' extensive, months-long service efforts. *See Gomba Music Inc. v. Avant*, No. 14-11767, 2016 U.S. Dist. LEXIS 50598, at *22 (E.D. Mich. Apr. 15, 2016) ("As for the final factor, Rodriguez was surely culpable, and that cannot be ignored. . . . Rodriguez's culpability started with his attempts to evade service, which the Court detailed in its order allowing alternate service. (Dkt. 19.)  After the alternate service, and after the clerk entered a default on August 15, 2014, Rodriguez still made no effort to respond for some time.").

Lambert, however, avers that she expected Smith to file a motion to dismiss her from this case and mistakenly believed she was dismissed, only later discovering that no such motion was filed and she was in default.  Lambert states that she has recently been the subject of many different legal actions, so "ascertaining the progress or status of each case is overwhelmingly difficult and time consuming." (ECF No. 61-1, PageID.562-63).  And Lambert Defendants specifically argue that "Lambert believed . . . Smith[] was also representing both Mrs. Lambert and her law

firm and would file a responsive pleading on their behalf.  This misunderstanding is excusable neglect, rather than a willful disregard of the legal process." (ECF No. 61, PageID.550).

First, it is questionable how an experienced attorney like Lambert expected Smith to represent Lambert Defendants and respond on their behalf here when she unequivocally states that he never appeared as their counsel and was unauthorized to accept service on their behalf in this matter.  But Lambert's affidavit nevertheless raises some doubt concerning whether the failure was willful, as opposed to the result of Lambert being inundated with cases and an honest miscommunication between her and Smith. *See United Coin Meter Co. v. Seaboard C. Railroad*, 705 F.2d 839, 846 (6th Cir. 1983) ("Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.").

Further, the Sixth Circuit instructs that "prejudice to the plaintiff and the presence of a meritorious defense are the two most important considerations" in deciding a 55(c) motion. *$22,050.00 U.S. Currency*, 595 F.3d at 324-25.  And there exists "a strong preference for trials on the merits in federal courts . . . ." *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986).

Accordingly, even accepting that this factor favors upholding the default, the Court concludes that the balance of factors in this case—the most important of which

being Lambert Defendants' meritorious defense and a lack of prejudice to Plaintiffs—warrants a decision on the merits. *See Bragg v. Cnty. of Wayne*, No. 13-10261, 2014 U.S. Dist. LEXIS 69499, at \*4-5 (E.D. Mich. May 21, 2014) (even though "Defendant has failed to show that he is not culpable for the delay," 55(c) motion granted because of questions "best resolved on the merits [rather] than in an default judgment"); *Gomba Music Inc.*, 2016 U.S. Dist. LEXIS 50598 at \*24 ("While Rodriguez and his counsel were culpable, that does not tip the balance in favor of sustaining the default.  Resolving all doubts in Rodriguez's favor, the primary culpability here is rooted in his attorneys' neglect, not his own willfulness. . . . Thus, on balance the Court finds good cause to set aside the default.") (citation omitted).  The Court therefore grants Lambert Defendants' motion to vacate the Clerk's entry of default.

### B.    Bachenberg's Motion to Hold Funds

Bachenberg requests that the Court order the $500,000 he previously paid Plaintiffs be held in their counsel's IOLTA account, or else returned to him and held in escrow, pending resolution of his appeal. (ECF No. 73).

"Under Supreme Court precedent, a stay is not a matter of right, but is rather an exercise of judicial discretion that requires examining the circumstances of the particular case." *Ohio State Conf. of the NAACP v. Husted*, 769 F.3d 385, 387 (6th

Cir. 2014) (cleaned up).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.*

> Four factors must be considered in deciding whether to issue a stay: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (cleaned up).

"The first two factors are the most critical." *Id.* (cleaned up).

The Court concludes that Bachenberg fails to meet the "heavy burden of demonstrating that a stay is warranted." *Id.* at 389.  First, he has not established a "*strong* showing" that he is likely to succeed on the merits.[5] *Id.*  Rather, Bachenberg provides a mere two paragraphs, with a single case citation, arguing that the Court erred by subjectively interpreting the settlement agreement contrary to its clear terms and the applicable law. (ECF No. 73, PageID.745).  Absent a more substantive discussion, with specific facts and caselaw cited to clarify the Court's alleged mistake, this factor does not favor a stay.

---

[5] "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [a] plaintiff[] will suffer absent the stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  As discussed next, Bachenberg fails to establish any amount irreparable injury.

Concerning irreparable injury, Bachenberg argues that absent a stay to hold the settlement funds,

> there is a likelihood that, during the pendency of the appeal, such funds will be transferred from the Plaintiffs' accounts, and no longer available to be returned to Mr. Bachenberg upon reversal of this Court's Order Grating Plaintiffs' Motion to Dismiss Bill Bachenberg Only.
>
> While monetary injuries are generally not considered irreparable, the unique circumstances of this case where the Plaintiffs have received the full settlement amount but continue to pursue claims against the Defendants, Stefanie Lambert and her law office, create a risk of harm that cannot be adequately remedied through compensatory relief after litigation concludes.  Holding the funds in escrow ensures that Mr. Bachenberg's rights are protected pending appellate review.

(ECF No. 73, PageID.745-46).

As Bachenberg recognizes, "monetary damages alone do not constitute irreparable injury for the purposes of a stay pending appeal." *In re Berry*, No. 14-12029, 2014 U.S. Dist. LEXIS 97485, at *6 (E.D. Mich. Jul. 18, 2014).  And "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).  Here, Bachenberg's alleged harm is both solely monetary and far from certain.  Rather, Bachenberg only speculates, without

supporting evidence,[6] that Plaintiffs could not satisfy a monetary judgment if he succeeds on appeal.  This factor, therefore, does not warrant a stay.

Accordingly, Bachenberg has not met his burden with respect to the two most critical factors at issue.  The balance of factors here therefore does not warrant a stay even if the public-interest and injury-to-others factors favor such relief. Bachenburg's motion is denied.

### C.      Scheduling

Federal courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016).  "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Good cause is present if a party seeking to extend a deadline shows that despite its diligence it could not meet it. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).  "Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment." *Id.* (citation omitted).

---

[6] "A movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *ACLU Fund of Mich. v. Livingston County*, No. 14-11213, 2014 U.S. Dist. LEXIS 71850, at *6 (E.D. Mich. May 27, 2014) (citing *Michigan Coalition*, 945 F.2d at 154).

On May 22, 2025, Plaintiffs moved to extend all discovery-related deadlines by 60 days. (ECF No. 44).  No defendant ever responded to this request.  To the extent the new deadlines proposed in the motion have already passed, the request for these specific dates is denied.  But the Court nevertheless concludes that good cause exists to modify the scheduling order, particularly given the Court's decision to vacate the Clerk's default against Lambert Defendants.  Accordingly, the Court will hold an in-person status conference and set an expedited schedule to advance this case.

* * *

For the reasons given, IT IS ORDERED Lambert Defendants' motion to vacate the Clerk's entry of default (ECF No. 61) is GRANTED.

IT IS FURTHER ORDERED that Bachenberg's motion to hold funds pending appeal (ECF No. 73) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion to amend scheduling deadlines (ECF No. 44) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that all deadlines in this case are stayed until further order of the Court.  The parties shall appear at an in-person status conference, and the Court will set an expedited schedule to advance this case.

SO ORDERED.

Dated: November 3, 2025                s/Robert J. White
                                       Robert J. White
                                       United States District Judge