UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YAACOV APELBAUM, a New York
resident, and XRVISION, LTD., a
New York corporation,

    Plaintiffs,

v.

STEFANIE LAMBERT, a Michigan
resident, and THE LAW OFFICE OF
STEFANIE L. LAMBERT, PLLC, a
Michigan professional limited
liability company,

    Defendants.
_____/

Case No. 2:23-cv-11718-RJW-APP
Hon. Robert J. White

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

### SUMMARY

    Defendants Stefanie Lambert and The Law Office of Stefanie L. Lambert, PLLC (collectively, "Defendants" or "Lambert") ask this Court to dismiss ten claims arising from defamatory statements, tortious interference, and breach of contract. The motion should be denied. Defendants' arguments misstate the applicable pleading standards, ignore controlling Sixth Circuit authority, and ask this Court to resolve disputed factual issues inappropriate for resolution at the motion to dismiss stage.

    The Complaint identifies specific defamatory statements, names the legislative bodies to whom the statements were published, alleges that the statements are provably false, and pleads actual malice. Under federal notice pleading standards, these allegations are more than sufficient. Defendants' invocation of Noerr-Pennington immunity fails because they have not addressed the sham exception. Knowingly false statements made to interfere with business

1

relationships are not protected petitioning activity. The tortious interference claim identifies the Pennsylvania Senate relationship that was terminated as a direct result of Defendants' conduct. The contract and quasi-contract claims are properly pled in the alternative as expressly permitted by Federal Rule of Civil Procedure 8(d).

## BACKGROUND

Plaintiffs Yaacov Apelbaum and XRVision, Ltd. are cybersecurity experts who were retained by Defendants to perform forensic analysis of election equipment. (Compl. ¶¶ 1-5, 35-40.) After Plaintiffs performed the requested services, Defendants refused to pay the $550,000 owed under the parties' agreement. (Compl. ¶¶ 134-136.) Defendants then made false and defamatory statements to the Pennsylvania Senate, the Wisconsin State Legislature, and the Arizona Senate. (Compl. ¶¶ 57-62.) Defendants falsely accused Plaintiffs of being "incompetent," "secretly working as malicious operatives of the federal government," and "entirely lacking any ability in the fields of cybersecurity and forensic analysis." (Compl. ¶ 60.) As a direct result of Defendants' defamatory statements, the Pennsylvania Senate terminated its relationship with Plaintiffs. (Compl. ¶ 62.) Plaintiffs brought this action seeking compensation for the unpaid services, damages for the defamatory statements, and damages for tortious interference with their business relationships.

## STATEMENT OF FACTS

In March 2022, Defendants retained Plaintiffs to perform forensic analysis of election equipment relating to the 2020 Presidential Election. (Compl. ¶¶ 35-40.) The parties agreed to an initial fee of $200,000, which was later expanded to a further $350,000 as the scope of

2

work increased. (Compl. ¶¶ 41, 46.) Plaintiffs performed the requested services. (Compl. ¶¶ 47-56.) Defendants refused to pay. (Compl. ¶¶ 134-136.)

Beginning in August 2022, Defendants initiated a defamation campaign against Plaintiffs. (Compl. ¶ 57.) Defendants contacted Plaintiffs' business relationships, including the Pennsylvania Senate, via texts, phone calls, in-person communications, and other means. (Compl. ¶ 58.) Defendants made knowingly false statements accusing Plaintiffs of professional incompetence, conflicts of interest, and acting as "malicious operatives of the federal government." (Compl. ¶¶ 59-60.)

Plaintiffs had finalized negotiations as sub-contractors and contractors for the Pennsylvania Senate to perform forensic analyses of various Pennsylvania elections systems. (Compl. ¶ 61.) As a direct result of Defendants' defamatory statements, the Pennsylvania Senate terminated its relationship with Plaintiffs. (Compl. ¶ 62.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The facts alleged must raise the right to relief above the speculative level. *Id.*

The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Doe v. Michigan State Univ.,* 989 F.3d 418, 422 (6th Cir. 2021). The defendant bears the burden of showing that the plaintiff has failed to state a claim. *Raymond v. Avectus Healthcare Solutions, LLC*, 859 F.3d 381, 383 (6th Cir. 2017).

3

# ARGUMENT

**I.      THE COMPLAINT SATISFIES FEDERAL PLEADING STANDARDS AND PROVIDES ADEQUATE NOTICE TO DEFENDANTS.**

Defendants' primary argument is that the Complaint constitutes an impermissible "shotgun pleading" that fails to provide adequate notice. (Defs.' Br. at 7-9.) This argument fundamentally misunderstands the applicable pleading standard and ignores controlling authority from this District and the Sixth Circuit.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Sixth Circuit has rejected heightened pleading requirements for defamation claims. In *Armstrong v. Shirvell*, 596 Fed. Appx. 433 (6th Cir. 2015), the Sixth Circuit expressly held that a plaintiff did not have to plead defamation with specificity, in accordance with Michigan law, as pleading rules were governed by federal pleading standards. *Id.* at 459.

This District has consistently applied federal pleading standards to defamation claims. In *State Farm Fire & Cas. Co. v. Goodman*, 860 F. Supp. 2d 432 (E.D. Mich. 2012), Judge Lawson rejected the argument that Michigan's heightened pleading standard for defamation should apply in federal court. The Court explained: "State Farm does not explain why the Court should apply state law to the procedural issue of pleading requirements. The Federal Rules of Civil Procedure govern the pleading requirements in federal court." *Id.* at 446. The Court noted that "Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud and mistake with particularity; it does not mention a heightened pleading standard for defamation." *Id.* at 446-47.

Defendants' reliance on *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386 (6th Cir. 2020), is misplaced. While it's true that the Sixth Circuit opposes "shotgun pleadings," the facts in Lee were quite extreme: all of the plaintiff's SEVEN causes of action were in a single sentence.

4

Additionally, courts typically order repleading rather than dismissal even when pleading deficiencies exist.

The Eastern District of Michigan in *K.O. v. G6 Hospitality, LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024), rejected shotgun pleading arguments similar to those raised here. In *K.O.*, the Court explained that the characteristic unifying all types of shotgun pleadings is that they make it "virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." *Id.* at 640 (quoting *Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d 803, 824 (S.D. Ohio 2023)). The Court found that there was no "shotgun pleading" because despite the inclusion of broad allegations, the plaintiff also alleged *specific* facts. *Id*. The court in *Arnold v. CooperSurgical, Inc.*, 681 F. Supp. 3d at 824 distinguished *Lee* because in that case the plaintiff had "pleaded seven distinct causes of action in a single sentence." *Id.* The court found that the plaintiff did NOT allege all of her causes of action in a single sentence. Rather, the court found that the plaintiff's amended complaint set forth unique factual matters for each count, and that the complaint was sufficiently comprehensible. *Id.*, at 825 ("the Amended Complaint allows the reader to determine which causes of action are asserted against each defendant and the factual allegations supporting each claim for relief"). In the case at bar, Plaintiffs do not incoherently lump the defendants together, and the Complaint is easily understood.

The Complaint provides far more than adequate notice. It identifies the speaker (Lambert and PLLC), the recipients (Pennsylvania Senate, Wisconsin Legislature, Arizona Senate), the approximate time frame, and the substance of the defamatory statements. (Compl. ¶¶ 57-62.) The Complaint quotes one statement verbatim. (Compl. ¶ 59.) Under federal notice pleading standards, this is more than sufficient.

**II.    THE DEFAMATION CLAIMS ARE ADEQUATELY PLED.**

    **A. The Complaint Identifies the Substance of the Defamatory Statements With Sufficient Specificity.**

5

Defendants argue that the defamation claims fail because the Complaint does not quote every allegedly defamatory statement verbatim. (Defs.' Br. at 10-12.) This argument is contrary to established Sixth Circuit law.

Courts within the Sixth Circuit have consistently held that describing the substance or gist of allegedly defamatory statements satisfies pleading requirements. In *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073 (S.D. Ohio 2021), the court applied federal pleading standards and found that a defamation complaint need only allege the substance of the allegedly defamatory statements, not set them out verbatim. *Id.*, see also *Suarez Corp. v. CBS, Inc.*, 23 F.3d 408 at *5 (6th Cir. 1994) ("While technical rules of pleading existed for defamation at common law, the liberalized requirements of the federal rules only require "notice" pleading"). The court emphasized that "federal procedural law is clear that 'Rule 9(b) does not apply to defamation claims; those claims need only be stated in accordance with Rule 8 of the Federal Rules of Civil Procedure.'" *Id.* at 1091-92.

Defendants may cite *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich. App. 48, 495 N.W.2d 392 (1992), for the proposition that plaintiffs must "plead precisely" defamatory statements. That case is inapposite. First, *Royal Palace* was a state court case. Further, the plaintiffs "merely attached transcripts purportedly containing defamatory statements" without specifying which statements were defamatory. *Id.* at 396. Here, the Complaint quotes one statement verbatim (Compl. ¶ 59) and describes the substance of others with sufficient particularity. (Compl. ¶ 60.)

The Complaint alleges that Defendants accused Plaintiffs of being incompetent, secretly working as malicious operatives of the federal government, and entirely lacking any ability in their professional fields. These allegations identify the defamatory content with sufficient specificity to satisfy federal pleading standards.

**B. The Statements Are Defamatory on Their Face and Constitute Verifiable Facts, Not Protected Opinion.**

6

Defendants assert without citation to any authority that the quoted statement "merely states a legal position regarding conflicts of interest" and is not defamatory. (Defs.' Br. at 10) This conclusory assertion fails for multiple reasons.

First, accusations of conflicts of interest are defamatory under both Michigan and Pennsylvania law because they impute misconduct in one's profession. *See Krolczyk v. Goddard Sys., Inc.,* 2017 PA Super 159, 164 A.3d 521 (2017); *Cetera v. Mileto*, 342 Mich. App. 441, 995 N.W.2d 838 (2022); MCL 600.2911.

Second, the other statements—accusing Plaintiffs of being "malicious operatives of the federal government" and "entirely lacking any ability" in their professional fields—are verifiable factual assertions, not protected opinions. Under *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), statements implying false underlying facts are actionable even if phrased as opinion. *Id.* at 18-19. "[A] statement on matters of public concern must be provable as false before there can be liability under state defamation law." *Id.* at 19.

The Sixth Circuit has applied this principle consistently. "[A] viable defamation claim exists only where a reasonable factfinder could conclude that the challenged statement connotes actual, objectively verifiable facts." *Compuware Corp. v. Moody's Inv. Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007). A statement is actionable when "it is sufficiently factual to be susceptible of being proved true or false" based on "objective evidence." *Milkovich*, 497 U.S. at 21.

Similarly, in *Susan B. Anthony List v. Driehaus*, 805 F. Supp. 2d 423 (S.D. Ohio 2011), the court rejected the defendant's argument that political characterizations were protected opinion. The court explained that whether a congressman "voted for taxpayer-funded abortion" was objectively verifiable. *Id.* at 431. Here, whether Plaintiffs were "secretly working as malicious operatives of the federal government" is equally verifiable—either they were employed by or acting at the direction of federal authorities, or they were not.

The accusation that Plaintiffs were "secretly working as malicious operatives of the federal government" implies specific, verifiable facts—that Plaintiffs are employed by or acting at the direction of federal authorities to undermine election integrity efforts. This is precisely the type of statement that implies "false underlying facts" and is actionable under *Milkovich*. Unlike loose, figurative, or hyperbolic language, this accusation can be proved true or false by objective evidence. *See id.* at 21.

### C. The Complaint Adequately Alleges Publication, Falsity, and Malice.

Defendants argue that the Complaint fails to adequately allege publication, falsity, and malice. (Defs.' Br. at 10-12.) Each argument fails.

**Publication**: The Complaint specifically identifies the third parties to whom the statements were published—the Pennsylvania Senate, the Wisconsin State Legislature, and the Arizona Senate. (Compl. ¶¶ 59-60, 103, 119.) Under federal notice pleading standards, this is sufficient. Further specificity regarding the precise individuals within these bodies can be obtained through discovery.

**Falsity**: The Complaint alleges that the statements "were and are provably false statements of fact." (Compl. ¶¶ 68, 84, 102, 118.) Courts in the Sixth Circuit have found that general allegations that statements were "false" are sufficient at the pleading stage. In *State Farm*, this Court held that nothing in the Federal Rules suggests that pleading a defamation claim is subject to a higher pleading standard than any other claim. 860 F. Supp. 2d at 446-47.

**Malice**: The Complaint alleges that Defendants "acted with willful misconduct, malice, fraud, wantonness, oppression" and "specifically intended to cause Plaintiffs harm." (Compl. ¶¶ 92, 125.) The Complaint alleges that Defendants published the statements "with knowledge of their falsity or with reckless disregard for their truth." (Compl. ¶ 117.) This Court in *State Farm* found similar allegations sufficient to satisfy Rule 8. 860 F. Supp. 2d at 447.

### C. Plaintiffs Are Private Figures, and Defendants Bear the Burden of Proving Otherwise.

Defendants implicitly suggest, without citation or analysis, that Plaintiffs are limited-purpose public figures. The burden of establishing public figure status rests with the defendant. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351 (1974). A limited-purpose public figure must have "voluntarily inject[ed] himself . . . into a particular public controversy." *Id.* at 351. The Court emphasized that a court must focus on the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 352.

The Supreme Court has made clear that "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167 (1979). In *Wolston*, the Court rejected the argument that media attention alone transforms a private person into a public figure. *Id.* The Court explained that a defendant "must show more than mere newsworthiness to justify application of the demanding burden of *New York Times*." *Id.* at 167-68.

In *Hutchinson v. Proxmire*, 443 U.S. 111, 113-14 (1979), the Supreme Court held that a scientist who received federal grants was not a "public figure" despite congressional criticism of his work. The Court explained that "those charged with alleged defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Id.* at 112-13. The Court specifically rejected the argument that "concern about public expenditures" was sufficient to make the plaintiff a public figure when he had not "assumed any role of public prominence in the broad question of such concern." *Id.* Like Dr. Hutchinson, Plaintiffs here were private consultants who did not seek public attention—any attention arose solely from Defendants' own allegedly defamatory statements.

Plaintiffs are private cybersecurity consultants who were retained confidentially. They did not thrust themselves into any public controversy—Defendants' own allegedly defamatory statements created any public attention. C.f., *Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 529-31 (6th Cir. 2014) (analyzing limited-purpose public figure status under *Gertz,* and finding law school voluntarily injected itself into public debate). Defendants have made no effort to meet their burden of proving that Plaintiffs are public figures. Their implicit argument fails.

### III.  NOERR-PENNINGTON IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS.

#### A. Defendants Failed to Address the Sham Exception.

Noerr-Pennington immunity is not absolute. The Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993) (hereafter referred to as "PRE"), established the two-part test for the sham exception: (1) the lawsuit or petition must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) if objectively baseless, the subjective motivation must constitute "an attempt to interfere directly with the business relationships of a competitor." Defendants' Motion does not address the sham exception at all.

The sham exception applies to "improper interference with governmental processes that amount to illegal reprehensible practices such as perjury, fraud, conspiracy with or bribery of governmental decision makers, or misrepresentation, or is so clearly baseless as to amount to abuse of process." *Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 759 at n.7 (E.D. Mich. 2004); quoting to *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512-13 (1972). The Complaint alleges that Defendants made knowingly false statements to legislators for the purpose of interfering with Plaintiffs' business relationships. (Compl. ¶¶ 60, 62, 140-141.) The

10

Complaint's allegations that Defendants' statements were knowingly false and made with actual malice are sufficient to invoke the sham exception.

The Supreme Court in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972), identified "misrepresentations in the adjudicatory process" as a category of sham conduct. *See also Audi AG*, 341 F. Supp. 2d at 759. The Complaint alleges precisely this: misrepresentations made to legislative bodies regarding Plaintiffs' professional competence and alleged government affiliations.

The Complaint's allegations that Defendants made knowingly false statements satisfies both prongs of the *PRE* test. A statement that is knowingly false is inherently "objectively baseless" because no reasonable person could believe it to be true. The *PRE* Court explained that the objective baselessness inquiry asks whether "no reasonable litigant could realistically expect success on the merits." 508 U.S. at 60. A petition premised on statements the petitioner knows to be false cannot, by definition, have reasonable expectation of success. This District Court in *Rondigo, LLC v. Township of Richmond*, 2012 WL 1021726, at *3 (E.D. Mich. Mar. 27, 2012) recognized that the sham exception applies when conduct is "not genuinely aimed at procuring favorable government action at all." Knowingly false accusations are the paradigmatic example of conduct not genuinely aimed at legitimate governmental outcomes, and they also enjoy no constitutional protection either. *Cf., Milkovich v. Lorain J. Co.*, 497 U.S. at 18 ("there is no constitutional value in false statements of fact").

Michigan courts have held that "defamation—injury to a person's good name—is actionable as the result of petitioning the government only where the petitioning was actually a 'sham.' *Id.*, at *8.

### B. Not All Defamation Claims Involve Petitioning Activity.

Noerr-Pennington immunity protects petitioning activity, but "not all defamation claims involve petitioning activity, which is the right the Noerr-Pennington doctrine is designed

11

to protect." *Rondigo, LLC v. Township of Richmond*, 2012 WL 1021726, at *12. The Complaint alleges defamatory statements made in informal communications to legislative bodies, not formal petitions, testimony, or filings. Whether such informal communications constitute protected petitioning activity is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss.

Defendants rely on *Azzar v. Primebank, FSB*, 198 Mich. App. 512, 499 N.W.2d 793 (1993), a thirty-year-old intermediate state appellate decision. More recent Sixth Circuit authority limits the scope of Noerr-Pennington immunity. Courts recognize that knowingly false statements made to government officials do not constitute genuine petitioning activity protected by the doctrine. The sham exception ensures that parties cannot cloak tortious conduct in the guise of petitioning. And this draws upon ancient principles of Anglo-American common law, such as equitable estoppel, among limitless others. Defamatory speech is inherently fraudulent in nature – equitable immunities are simply not built upon a foundation of fraud.

### D. Noerr-Pennington Immunity Has Limited Application Outside the Antitrust Context.

Courts have questioned whether Noerr-Pennington properly applies outside antitrust cases. In *DIRECTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d 825, 840 (E.D. Mich. 2003), the court observed that "a variety of courts have acknowledged the incongruity of applying the Noerr-Pennington doctrine outside the antitrust context where immunity is cognizable only on First Amendment grounds." The court noted that "it is a bit of a misnomer to refer to it as the Noerr-Pennington doctrine" outside antitrust because the doctrine "was based on *two* rationales"—one being Sherman Act interpretation. *Id.*

12

This distinction is not academic because Noerr-Pennington precedents are founded in part upon a construction of the Sherman Act, and are not completely interchangeable with cases based solely on the right to petition. The *Audi AG* court observed that cases involving communications related to judicial proceedings are "best decided under the litigation privilege" rather than Noerr-Pennington. 341 F. Supp. 2d at 758. Even under the litigation privilege framework, communications are only protected when they are "issued in the regular course of judicial proceedings and which are pertinent and material to the relief sought." *Pawlowski v. Smorto*, 403 Pa. Super. 71, 588 A.2d 36, 41 (1991). Knowingly false statements made with improper motive fall outside this protection.

### IV.  QUALIFIED PRIVILEGE DOES NOT BAR PLAINTIFFS' CLAIMS AT THIS STAGE.

Defendants argue that their statements are protected by qualified privilege because they were made to government officials regarding matters of public interest. (Defs.' Br. at 17-18.) This argument fails for two independent reasons.

First, qualified privilege is an affirmative defense that cannot be determined on a motion to dismiss when actual malice is alleged. *Mitchell*, 518 F. Supp. 3d at 1091-92. Michigan courts have long recognized that qualified privilege can be overcome by a showing of actual malice. *Vandentoorn v. Bonner*, 342 N.W.2d 297, 302 (1983). To prevail in a defamation suit where a qualified privilege exists, the plaintiff must show that the defendant acted with actual malice." *Id.,* at 299 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, (1964)). "[A]ctual malice is shown where the writing was made with the knowledge it was false or in reckless disregard as to whether it was false or not." *Swenson-Davis v. Martel*, 354 N.W.2d 288, 291 (1984).

A plaintiff can overcome qualified privilege by showing "actual malice," which consists of "clear and convincing evidence that the defendant published the statement at issue with

knowledge that it was false or with reckless disregard for its truth or falsity." "To overcome such a qualified privilege, a plaintiff must produce evidence that the complained-of statements were 'intentionally false or made with reckless disregard for the truth.'" *Handlon v. Rite Aid of Mich., Inc.*, 513 Fed. Appx. 523, 529-30 (6th Cir. 2013). The Complaint alleges precisely this. (Compl. ¶ 117.)

Second, the Complaint adequately alleges actual malice to overcome the privilege. The Complaint alleges that Defendants made the statements "with knowledge of their falsity or with reckless disregard for their truth." (Compl. ¶ 117.) Unlike the defendants in *Kurzon Strauss*, who relied on published reports and issued a retraction upon receiving a cease-and-desist letter, 759 F.3d at 525-26, Defendants here allegedly made knowingly false statements after being directly engaged with Plaintiffs and understanding the truth of their professional capabilities. The Complaint alleges Defendants knew the statements were false because Defendants had firsthand experience with Plaintiffs' work. (Compl. ¶¶ 47-56, 117.) Whether Defendants acted with actual malice is a fact question that cannot be resolved on a motion to dismiss.

Under Pennsylvania law, Defendants bear the burden of proving the privileged character of the occasion. 42 Pa.C.S. § 8343(b). Even if Defendants establish a conditional privilege, Plaintiffs can defeat it by showing abuse through actual malice. *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267-68 (Pa. Super. 2005). Communications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged. *Miketic v. Baron*, 675 A.2d 324, 329 (Pa. Super. 1996) (as cited in *Moore*). The Complaint alleges that Defendants' statements were made with improper motive—to harm Plaintiffs' business relationships—and were not based upon reasonable cause because Defendants knew the statements were false. On a motion to dismiss, Defendants bear

14

the burden of establishing their affirmative defenses. *Heyward v. Cooper*, 88 F.4th 648, 654-55 (6th Cir. 2023).[1] They have not met this burden.

## V. DEFENDANTS' INTRODUCTION IMPROPERLY INJECTS CONTESTED FACTS OUTSIDE THE COMPLAINT.

Defendants' Introduction (Defs.' Br. at 1-2) contains factual assertions presented as established facts that are actually contested and outside the four corners of the Complaint. Defendants assert that Mr. Apelbaum was "entirely inept," that "his services were terminated" for cause, and that Plaintiffs' lawsuit constitutes "retaliation." None of these assertions appear in the Complaint.

On a motion to dismiss, this Court must accept the Complaint's well-pleaded factual allegations as true. *Raymond*, 859 F.3d at 383. Defendants' Introduction presents a counter-narrative that contradicts the Complaint and asks the Court to credit defense facts over plaintiff facts—the opposite of the Rule 12(b)(6) standard. The Court should disregard Defendants' improper factual assertions and evaluate the motion based solely on the allegations in the Complaint.

## VI. DEFENDANTS' ANTI-SLAPP RESERVATION CONTRADICTS THEIR SHOTGUN PLEADING ARGUMENT.

In footnote 1 of their Motion, Defendants state that they would have moved under Arizona and Pennsylvania Anti-SLAPP statutes had the Complaint "stated claims with sufficient particularity." (Defs.' Br. at 1 n.1.) This creates an irreconcilable paradox. Defendants argue in their Motion that the Complaint is too vague to provide adequate notice.

---

[1] NB. Courts in the Sixth Circuit are reluctant to dismiss complaints based on affirmative defenses at the pleadings stage and before any discovery has been conducted. *FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 741 (N.D. Ohio 2021) (quoting *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013)).

15

Yet they simultaneously reserve the right to file an Anti-SLAPP motion—which would require the Complaint be sufficiently clear to constitute a SLAPP suit targeting protected speech.

Defendants cannot have it both ways. Either the Complaint is clear enough to trigger Anti-SLAPP protections, in which case it provides adequate notice, or it is too vague to understand, in which case Defendants cannot claim it constitutes a strategic lawsuit against public participation. This internal inconsistency demonstrates that Defendants' shotgun pleading argument is pretextual.

### VII. THE TORTIOUS INTERFERENCE CLAIM IS ADEQUATELY PLED.

Defendants argue that the tortious interference claim fails because the Complaint does not identify specific business relationships with sufficient particularity. (Defs.' Br. at 14-15.) This argument ignores what the Complaint actually alleges.

The Complaint specifically identifies the Pennsylvania Senate as a third party with whom Plaintiffs had a business relationship. (Compl. ¶¶ 61-62, 138.) The Complaint alleges that Plaintiffs "had finalized negotiations as sub-contractors and contractors for the Pennsylvania Senate to perform forensic analyses of various Pennsylvania elections systems." (Compl. ¶ 61.) The Complaint alleges that "[a]s a direct result of Lambert and PLLC's conduct described herein, the Pennsylvania Senate terminated its relationship with Plaintiffs." (Compl. ¶ 62.)

Under federal notice pleading standards, tortious interference claims are not subject to heightened particularity requirements. "In general . . . courts have not applied Rule 9's heightened pleadings standards to claims of tortious interference under Michigan law." *Ross v. Bachand*, 2015 WL 4644912, at *7 (E.D. Mich. Aug. 5, 2015). *See also Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*, 2012 WL 1931519, at *2 (E.D. Mich. May 29, 2012); *Beirut Traders Co. v. Neiman Marcus Grp., Inc.*, 2009 WL 3460674, at *1 (E.D. Mich. Oct.

16

22, 2009). "[T]he pleading standard for tortious interference contrasts, of course, with an independent claim for fraud." *Ross*, 2015 WL 4644912, at *7 n.5.

Under Michigan law, a plaintiff must allege: (1) the existence of a valid business relationship or contract; (2) knowledge of the relationship or contract by the interferer; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages to the party whose relationship was disrupted. *Giasson Aerospace Science, Inc. v. RCO Engineering, Inc.*, 2010 WL 360419, at *2 (E.D. Mich. Jan. 22, 2010). A plaintiff must also "allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* The Complaint satisfies each of these elements.

The Michigan Court of Appeals has recognized that making false statements constitutes a "per se wrongful act" sufficient to support tortious interference. In *Knight v. RPF Oil Company*, 299 Mich. App. 275, 279-80 (2012), the court explained: "One who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* The Complaint alleges that Defendants made knowingly false defamatory statements—a per se wrongful act—for the purpose of interfering with Plaintiffs' business relationship with the Pennsylvania Senate. (Compl. ¶¶ 60, 62, 140-141.) This is sufficient to state a claim for tortious interference.

### VIII. THE CONTRACT AND QUASI-CONTRACT CLAIMS ARE PROPERLY PLED.

#### A. The Breach of Contract Claim Identifies Essential Terms.

Defendants argue that the breach of contract claim fails to allege essential contract terms. (Defs.' Br. at 20-21.) The Complaint alleges that Defendants retained Plaintiffs in March 2022 to perform forensic analysis services for $200,000, later expanded to an additional

17

$350,000. (Compl. ¶¶ 41, 46.) The parties are identified, the subject matter is specified, and the price is stated. These are the essential terms of a contract, and they are sufficiently alleged.

### B. Alternative Pleading Is Expressly Permitted Under Federal Rule 8(d).

Defendants argue that the quasi-contract claims (promissory estoppel and quantum meruit) are barred because the Complaint also alleges an express contract. (Defs.' Br. at 21-22.) This argument ignores Federal Rule of Civil Procedure 8(d)(2) and (3), which expressly permit alternative and inconsistent pleading.

Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically." Rule 8(d)(3) states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." The Eastern District of Michigan has applied these rules to permit plaintiffs to plead breach of contract and quasi-contract claims simultaneously. *See, for e.g., Detroit Tigers, Inc. v. Ignite Sports Media, LLC.*, 203 F. Supp. 2d 789 (E.D. Mich. 2002). The Complaint's Paragraph 171, which acknowledges that "the existence of a contract between the Plaintiffs and Defendants is disputed in part or in whole," is precisely the type of alternative pleading contemplated by Rule 8(d).

The Eastern District of Michigan has applied these principles to allow quasi-contract claims to proceed alongside express contract claims. In *Ford Motor Co. v. Ghreiwati Auto*, 945 F. Supp. 2d 851 (E.D. Mich. 2013), the court denied a motion to dismiss unjust enrichment and promissory estoppel counterclaims even though express contracts existed between the parties. The court reasoned that "without a careful parsing of the contracts and appropriate factual development, the Court cannot say that Defendants have not stated a rough plausible claim to relief." *Id.* at 872-73.

Courts in this Circuit have found promissory estoppel claims adequately pled when the plaintiff identifies the promise and alleges reliance. *See, e.g., Miami Valley Mobile Health*

18

*Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 941 (S.D. Ohio 2012) (finding allegation that defendant "promised that all contracts would be honored" was "an express promise" sufficient to state a promissory estoppel claim).  Here, the Complaint alleges that Defendants promised to pay $350,000 for Plaintiffs' services (Compl. ¶ 46), that Plaintiffs performed in reliance on that promise (Compl. ¶¶ 47-56), and that Defendants' refusal to pay caused damages (Compl. ¶¶ 134-136).  These allegations are sufficient to state a promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: January 5, 2026

                                                Respectfully Submitted,

/s/ John C. Burns
John C. Burns
BURNS LAW FIRM
PO Box 191250
St. Louis, Missouri 63119
(314) 329-5040
TBLF@pm.me

STUART LAW PLC
Todd A. Stuart (P70187)
Attorneys for Plaintiffs
2851 Charlevoix Dr SE, STE 207
Grand Rapids, MI 49546
(616) 209-9270
tstuart@stuartlawplc.com

19

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 5, 2026, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ John C. Burns*
John C. Burns