UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| YAACOV APELBAUM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STEFANIE LYNN LAMBERT, et al.,<br><br>Defendants. | Case No. 23-cv-11718<br><br>Honorable Robert J. White |

**OPINION AND ORDER DENYING MOTION TO DISMISS**

Yaacov Apelbaum and his cybersecurity firm, XRVision, Ltd. (Plaintiffs), commenced this diversity breach of contract and defamation action against attorney Stephanie Lynn Lambert, her law office,[1] and Bill Bachenberg, after the parties allegedly contracted for Plaintiffs to investigate potential fraud during the 2020 general election. (ECF No. 1). Before the Court is Lambert Defendants' motion to dismiss. (ECF No. 85). The parties fully briefed the motion, and the Court will decide the matter without oral argument pursuant to Local Rule 7.1(f)(2). For the reasons explained below, the Court denies Lambert Defendants' motion.

[1] Lambert and her firm are collectively referred to as the Lambert Defendants.

## I. Background

Following the 2020 election, the Lambert Defendants, with financial assistance and partial direction from Bachenberg, promoted various claims of election fraud, including through lawsuits challenging election results. (*See* ECF No. 1, PageID.3-4).[2] Pursuant to these efforts, the Lambert Defendants pursued various election fraud investigations, and they hired Plaintiffs to conduct forensic analyses of election results and/or procedures in Michigan and Pennsylvania. As particularly relevant here, the parties in March 2022 "entered into an agreement for Plaintiffs to perform a forensic analysis of Fulton County, Pennsylvania's elections systems, in exchange for $200,000." The parties later expanded the scope of Plaintiffs' analysis "for an additional fee of $350,000." (ECF No. 1, PageID.4-8).

Plaintiffs allegedly performed their obligations of this agreement, but after they found and reported no evidence of election fraud in June 2022, Defendants never paid them as agreed. (ECF No. 1, PageID.6-8). Further, the Lambert Defendants also allegedly started a defamation campaign against Plaintiffs around August 2022 to dissuade the Pennsylvania Senate, among others, from doing business with Plaintiffs. (ECF No. 1, PageID.8-9). According to Plaintiffs, they had at the time finalized negotiations with the Pennsylvania Senate to perform a forensic

[2] Given the applicable standard of review, the underlying facts of this case are derived from the well-pleaded allegations in Plaintiffs' complaint.

analysis of the whole state's election system, but Lambert Defendants' conduct caused the Pennsylvania Senate to terminate this relationship. (ECF No. 1, PageID.9).

On July 18, 2023, Plaintiffs filed a verified complaint against Defendants, asserting claims of libel, slander, breach of contract, tortious interference, promissory estoppel, and unjust enrichment. (ECF No. 1, PageID.9-25). Bachenberg answered on November 22, 2023. (ECF No. 9). On December 12, 2023, after Plaintiffs' unsuccessful efforts to serve Lambert Defendants, the Court granted Plaintiffs' motion for alternate service. (ECF No. 10). Following the Lambert Defendants' continued lack of response to the lawsuit, (*see* ECF Nos. 12, 14), the Clerk entered default against the Lambert Defendants for their failure to plead or otherwise defend in this action (ECF No. 16).

In June 2025, Plaintiffs filed a motion to dismiss Bachenberg with prejudice pursuant to a settlement agreement between him and Plaintiffs. (ECF No. 52). Around this time, attorney David Lawrence Perry II filed an appearance to represent both Bachenberg and Lambert Defendants.[3] (ECF No. 51). This was the first time in this case anyone appeared for the Lambert Defendants. And on June 21, 2025, Perry filed a motion to enforce the aforementioned settlement agreement on behalf

[3] On June 30, 2025, the Court entered a stipulated order substituting Perry for Bachenberg's prior counsel. (ECF No. 58). Perry remains counsel of record for all Defendants at this time.

of all Defendants. (ECF No. 54). Perry, on July 1, 2025, also filed a motion to vacate the Clerk's entry of default on behalf of Lambert Defendants. (ECF No. 61).

Following a hearing, the Court in relevant part (1) granted Plaintiff's motion to dismiss Bachenberg with prejudice pursuant to the parties' settlement agreement; (2) directed the Clerk to terminate Bachenberg as a party; and (3) denied Defendants' motion to enforce the agreement "so as to dispose of the claims asserted against not only Bachenberg, but those asserted against Lambert [Defendants] as well." (ECF No. 67, PageID.658-59). The Court concluded that the settlement agreement at issue was only intended to cover claims against Bachenberg, not those against the Lambert Defendants.

On July 28, 2025, Bachenberg filed a motion to hold settlement funds pending appeal of the Court's order resolving the settlement dispute and dismissing claims against Bachenberg only. (ECF No. 73). Bachenberg's appeal was ultimately dismissed by the Sixth Circuit Court of Appeals. (ECF Nos. 92-93). On November 3, 2025, the Court denied the motion to hold settlement funds but granted Lambert Defendants' motion to vacate the entry of default. (ECF No. 78). The Court later denied Lambert Defendants' motions for recusal and a stay of proceedings. (ECF No. 90).

Accordingly, only Plaintiffs' claims against the Lambert Defendants remain at issue here. These are (1) two counts for libel (one with common law malice and

one with actual malice), (2) two counts for slander (one with common law malice and one with actual malice), (3) one count for breach of contract, (4) one count for tortious interference, (5) one count for promissory estoppel, and (6) one count for unjust enrichment. Lambert Defendants now move to dismiss these claims. (ECF No. 85).

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 882 (6th Cir. 2023) ("In analyzing a 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true.") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. "But a pleading must go beyond 'labels and conclusions' or a mere 'formulaic recitation of the elements of a

cause of action.'" *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

## III. Analysis

Lambert Defendants argue that (1) Plaintiffs' complaint should be dismissed as an improper shotgun pleading; (2) the claims for libel, slander, and tortious interference suffer from numerous pleading deficiencies; (3) the claims for libel, slander, and tortious interference lack merit because the statements at issue relate to protected speech; and (4) the breach of contract, promissory estoppel, and unjust enrichment claims all, for various reasons further described below, fail as a matter of law. (ECF No. 85, PageID.826-42).

### A. Shotgun Pleading

Lambert Defendants first argue that Plaintiffs' complaint is an improper shotgun pleading that fails to give them adequate notice of the claims at issue. (ECF No. 85, PageID.826-28); *see also Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (the plaintiff's "fail[ure] to separate each of her causes of action or claims

for relief into separate counts" is the "type of 'shotgun pleading' [that] violates Rule 10(b).").

The Sixth Circuit analyzes a motion to dismiss in which a defendant raises "shotgun pleading" as grounds for dismissal by determining whether the complaint violates the Federal Rules of Civil Procedure. *See Lee*, 951 F.3d at 393. Fed. R. Civ. P. 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. And under Rule 8, a plaintiff must "connect specific facts or events with the various causes of action . . . asserted." *Lee*, 951 F.3d at 392-93.

In *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024), the Court stated that "[a] 'shotgun pleading' is one that makes it virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." *Id.* at 640 (cleaned up); *see also Arnold v. Coopersurgical, Inc.*, 681 F. Supp. 3d 803, 823-24 (S.D. Oh. 2023) ("a 'shotgun pleading' is generally 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.'") (citation omitted). "Shotgun pleadings often seek to overwhelm defendants with an unclear mass of

allegations and make it difficult or impossible for the defendants to make informed responses to the plaintiff's allegations." *K.O.*, 728 F. Supp. 3d at 640 (cleaned up).

Lambert Defendants seek dismissal of the complaint on the basis that it is a shotgun pleading that fails to meet the requirements of Rule 8 because it incorporates every antecedent allegation by reference into each subsequent claim for relief. (ECF No. 85, PageID.826-28). But "[i]ncorporation by reference is permitted by Rule 10(b) and (c)," and it only becomes improper if "used indiscriminately." *In re Penn*, No. 25-53061, 2026 Bankr. LEXIS 1816, at *21 (Bankr. S. D. Oh. July 22, 2026) (quoting *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026)); *see also Arnold*, 681 F. Supp. 3d at 825 (finding that the complaint was not a shotgun pleading because, among other things, it "sets forth unique factual matter for each count that goes beyond incorporating the foregoing paragraphs").

Here, the complaint contains sixty-two general factual allegations followed by ten causes of action. The first allegation under each cause of action provides that "Plaintiffs incorporate by reference all prior paragraphs as though fully restated and set forth herein." (ECF No. 1, PageID.1-24). However, Plaintiffs set forth specific facts beyond these indiscriminate incorporations by reference. For example, each count for defamation (libel or slander) includes a much more limited incorporation by reference directing the reader to the specific facts from Plaintiffs' general allegations underlying these claims. (*See, e.g.,* ECF No. 1, PageID.16 ("As stated

more fully above, Defendants have made false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60 above ('Statements')."")). Similarly, Plaintiffs' unjust enrichment claim includes numerous paragraphs of supporting facts to provide adequate notice of the grounds upon which it rests.

To the extent Plaintiffs' claims for breach of contract, tortious interference, and promissory estoppel largely recite the elements of each cause of action without much if any unique factual matter, it is clear from the complaint—as described in the factual summary above—the alleged agreement, failure to pay, and interference with Plaintiffs' business relationships that form the factual basis for these claims. For example, although Plaintiffs merely assert under Count 5 (breach of contract) that the parties entered an agreement "[a]s stated above," (ECF No. 1, PageID.18), the claim can be fairly read to refer to the alleged March 2022 agreement under which Plaintiffs' performed but were never paid. Further, because Plaintiffs' various claims rely on many common facts, their general incorporations by reference do not preclude fair notice. *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1075 (D. Colo. 2021) ("And because all of the plaintiff's claims have essentially the same factual underpinning, the Court is not persuaded that this is a case where incorporating prior allegations into each claim makes the claim unintelligible.").

Under these circumstances, the Court concludes that the complaint includes sufficient factual matter to give the Lambert Defendants fair notice of the claims and the grounds upon which they rest.

**B. Sufficiency of Pleadings—Libel and Slander**

To establish a claim for defamation under Pennsylvania law,[4, 5] including libel (written defamation) or slander (oral defamation), a plaintiff must prove: (1) the defamatory nature of the alleged communication(s); (2) publication of the communication(s) by the defendant; (3) application of the communication to the plaintiff; (4) the recipient's understanding of the communication's meaning; (5) the recipient's understanding that the communication is intended to be applied to the

[4] Neither Plaintiff's complaint nor the parties' briefing specifies or substantively addresses whether the various state claims arise under Michigan or Pennsylvania law; indeed, in their briefing specific to defamation, Plaintiffs and Lambert Defendants each cite to the law of both states. The Court will at this stage apply Pennsylvania law to Plaintiffs' defamation claims because (1) the motion to dismiss relies on Pennsylvania's defamation statute, (2) Plaintiffs do not contest that Pennsylvania law applies, and (3) the claims factually relate to statements allegedly made to Pennsylvania legislators concerning work Plaintiffs would presumably undertake in that state. *But see Reilly v. Meffe*, 6 F. Supp. 3d 760, 769 (S.D Oh. 2014) ("When neither party raises a conflict of law issue in a diversity case, a federal court applies the law of the forum state.").

[5] The Court nevertheless notes that the relevant standards are for the most part materially similar under both Michigan and Pennsylvania law. Indeed, the Court's conclusions in this case would be the same under the law of either state. That said, the Court is prepared to conduct a more complete choice of law analysis if a party more clearly raises the issue at a later stage of the case.

plaintiff; (6) special harm resulting to the plaintiff; and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S.A. § 8343.

"Caselaw prescribes additional elements that arise in relation to the character of the statement, the role of the defendant as a media outlet, or the role of the plaintiff as a public official or public figure." *Lewis v. Phila. Newspapers, Inc.*, 833 A.2d 185, 191 (Pa. Super. Ct. 2003). "If the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false." *Id.* "If the plaintiff is a public official or public figure, [he] or she must prove also that the defendant, in publishing the offending statement, acted with 'actual malice,' i.e. 'with knowledge that [the statement] was false or with reckless disregard of whether it was false or not.'" *Id.* (citation omitted; second alteration in original). In evaluating these elements at the pleading stage, dismissal is proper under Pennsylvania law when, accepting all well-pled facts as true, "the law says with certainty that no recovery is possible." *See Tucker v. Phila. Daily News*, 577 Pa. 598, 614-21, 625-35 (Pa. 2004) (dismissing complaint where the plaintiffs sufficiently alleged the element of defamatory nature but not actual malice).[6]

[6] While federal pleading standards apply in this case, *see supra* at pp 13-14, *Tucker* remains helpful to show how a complaint alleging defamation under Pennsylvania law should be viewed under similar, albeit not identical, standards.

The Lambert Defendants first argue that Plaintiffs' complaint lacks the requisite specificity regarding the allegedly defamatory statements. (ECF No. 85, PageID.829-30). They also argue that Plaintiffs inadequately allege "how, when, and to whom" the allegedly defamatory statements were published: "For example, any statements allegedly made before legislative bodies require specific context, including the circumstances surrounding their dissemination. Without those specific details, it is impossible to assess whether the statements are actionable or privileged." (ECF No. 85, PageID.830). And Lambert Defendants relatedly argue that the statements, given their First Amendment character, are privileged and/or immunized under the *Noerr-Pennington* doctrine. (ECF No. 85, PageID.835-39).[7] Lastly, Lambert Defendants argue that Plaintiff's allegations concerning falsity, actual malice, and damages are too conclusory to state a claim. (ECF No. 85, PageID.830-32).

Concerning the first two elements of defamation—that the defendant published some communication(s) of a defamatory nature—Plaintiffs allege in relevant part: "As stated more fully above, Defendants have published false and defamatory statements about Plaintiffs, as more fully stated in paragraphs 57-60

[7] Because the Lambert Defendants' arguments concerning the alleged statements' First Amendment character, privilege, and the *Noerr-Pennington* doctrine largely apply to both the defamation and tortious interference claims, these are addressed separately as a common issue. *See supra* Section III.D.

above ('Statements')." (ECF No. 1, PageID.9; *see also id.* at PageID.12, 14, 16).

And these allegations incorporated by reference provide:

> 57. Upon information and belief, on or about August of 2022, Defendants Lambert and PLLC began a defamation campaign directed against Plaintiffs.
>
> 58. Upon information and belief, Lambert and PLLC began speaking with Plaintiffs' business relationships, including but not limited to the Pennsylvania Senate, in texts, phone calls, in person, and in other communications, actively and deliberately trying to persuade these business relationships against doing business with Plaintiffs.
>
> 59. Upon information and belief, as reasons to avoid doing business with the Plaintiffs, Defendants Lambert, and PLLC falsely stated that the Plaintiffs had conflicts of interest with her clients and/or her firm, that she would sue the Plaintiffs if they were to be engaged in these relationships, and implicitly that she would take legal action against the relationships themselves if they were to hire Plaintiffs. To wit:
>
> > "Your office will receive a formal letter from my office today. Yaacov Apelbaum has a conflict of interest. He was hired by Fulton County. He is bound by privilege. His firm will be sued if he performs any analysis on Fulton County data for the Senate."
>
> 60. Specifically, upon information and belief, Lambert and PLLC also indicated, in written and verbal communications with representatives of the Pennsylvania Senate, the Wisconsin State Legislature, and the Arizona Senate, that the Plaintiffs were:
>
> > a. incompetent.
> >
> > b. secretly working as malicious operatives of the federal government; and
> >
> > c. entirely lacking any ability in the fields of cybersecurity and forensic analysis.

(ECF No. 1, PageID.8-9).

As an initial matter, under Pennsylvania law, "[a] complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom those statements were made." *Lilac Meadows, Inc. v. Rivello*, 25 Pa. D. & C. 5th 250, 265 (Lackawanna C.P. Ct. 2012). However, federal pleading standards govern here, so any heightened or specialized requirements applicable under state law do not apply to the instant defamation claims. *See State Farm Fire & Cas. Co. v. Allied & Assocs.*, 860 F. Supp. 2d 432, 446-47 (E.D. Mich. 2012) ("The Federal Rules of Civil Procedure govern the pleading requirements in federal court. . . . Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud and mistake with particularity; it does not mention a heightened pleading standard for defamation. [Counterclaimant] need only satisfy Rule 8, which requires her to plead sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up); *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1091-93 (S.D. Oh. 2021) (applying federal pleading standards to Ohio defamation claims and rejecting argument that the plaintiff failed to identify the allegedly defamatory statements with requisite specificity).

Accordingly, the Court rejects the Lambert Defendants' argument to the extent it relies on state-law pleading requirements for defamation inapplicable here. And

applying federal pleading standards, Plaintiffs have plausibly alleged the publication of defamatory statements.

"The initial determination of whether a communication is [defamatory] is a question of law for the Court to decide." *Reardon v. Allegheny College*, 926 A.2d 477, 484 (Pa. Super. Ct. 2007). "A communication is [defamatory] if it is intended to lower the view of the target of the communication in the community or if it is intended to deter third persons from associating with the target." *Id.* "In determining whether a communication is [defamatory], the Court must determine the effect of the communication in the minds of average people amongst whom the communication is intended to circulate." *Id.*

"A statement that is merely an expression of an opinion, however, cannot constitute [defamation]." *Id.* "Pennsylvania . . . distinguishes a statement of fact from a statement of opinion by whether it can be 'objectively determined.'" *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019) (citation omitted). "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Id.*

> [E]xpressions of opinion fall into two sub-categories:
>
> (1) The pure type — which "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character."

> (2) The mixed type — which "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant."

*Id.* (citation omitted).

"A speaker does not become immune from liability merely by couching a statement as an opinion." *Id.* at 671 (cleaned up). "Accordingly, and as held by Pennsylvania courts, a statement qualified by the speaker as being only an opinion may nevertheless be considered a statement of fact if it could 'reasonably be interpreted' as such by the audience." *Id.* (citation omitted). "An opinion can be defamatory if [it] is misleading or based on undisclosed facts which are not true." *Id.*

Here, all the alleged statements have the practical effect of deterring third parties from associating with Plaintiffs, particularly considering the alleged circumstances where the statements were made to at least one group (the Pennsylvania Senate) with whom Plaintiffs were actively negotiating to provide their services. First, the statement that Plaintiffs were legally conflicted from performing any analysis of Fulton County election data could surely deter—and allegedly did so here with respect to the abandoned negotiations with the Pennsylvania Senate—third parties from hiring Plaintiffs for such services, particularly with the included warning of legal action. Construing the complaint in Plaintiffs' favor, it is reasonable

to infer, largely as a matter of common sense, that a third party would not want to hire Plaintiffs for services for which they would be subject to suit because of or otherwise limited by a conflict of interest.

The statement that Plaintiffs "secretly work[]" as "malicious operatives" also sufficiently impugns their honesty and integrity such that a third party would certainly hesitate to associate with them. And average people could reasonably construe a lack of these facilities as making Plaintiffs unfit to perform the sensitive cybersecurity and forensic auditing services they offer. *See Krolczyk v. Goddard Sys.*, 164 A.3d 521, 531 (Pa. Super. Ct. 2017) ("defamation *per se* occurs when the statement ascribes to the plaintiff . . . conduct or characteristics that adversely affect the plaintiff's fitness to properly conduct his profession, trade or business"). Likewise, the statements that Plaintiffs are "incompetent" and "entirely lacking any ability in . . . cybersecurity and forensic analysis" without a doubt adversely relate to Plaintiffs' conduct in their business or profession. Further, the Court must accept as true at this stage that the statements "were deliberately made to persuade the Pennsylvania Senate against using Plaintiffs' forensic services." (*See, e.g.,* ECF N. 1, PageID.16).

Next, the Court cannot conclude as a matter of law at this early stage that any of these statements constitute nonactionable pure opinion. To the extent the Lambert Defendants couch the conflict-of-interest statement as protected legal opinion, they

do not substantively explain how it (or any of the other allegedly defamatory statements) could not be objectively verified. Accepting the allegations as true, however, whether Plaintiffs were conflicted as a matter of law or contract, or secretly and maliciously worked as federal operatives, are objectively verifiable facts. Both alleged defamatory statements were presented as straightforward expressions of fact, not as subjective beliefs, and they can be verified by the records concerning Plaintiffs' prior work involving Fulton County and the federal government. And to the extent the statements concerning Plaintiffs' professional capabilities involve a greater potential for subjectivity, these also were made as straightforward expressions of fact rather than mere belief.

Further, all the alleged statements at this stage constitute at most mixed opinion because they each imply knowledge of undisclosed facts privy to the Lambert Defendants. *See Malia v. Monchak*, 543 A.2d 184, 191 (Pa. Commw. Ct. 1988) ("We conclude that an inference may be deduced from the facts pleaded that it is reasonable for those who heard the statement made by Saxe, during the School Board meeting, to conclude that, as a School Board member, Saxe was privy to undisclosed facts concerning Malia's performance. Therefore, it was an error of law for the trial court, at this point in the litigation, with only the Appellants' complaint available, to dismiss the count against Saxe on the basis that his alleged d[e]famatory statement was 'pure' opinion.").

Critically, it can be reasonably inferred that Lambert Defendants made each allegedly defamatory statement based on their prior involvement with Plaintiffs, particularly the work Plaintiffs allegedly did for the Lambert Defendants in both Michigan and Pennsylvania. And it is therefore reasonable for those hearing only that Plaintiffs (1) had a conflict of interest, (2) were generally incompetent and lacking any ability in their fields of business, and (3) operated secretly and maliciously for the federal government to conclude that the Lambert Defendants based their knowledge, and any purported opinion statement, on specific previous interactions with Plaintiffs that the Lambert Defendants never disclosed or explained.[8]

For example, the Lambert Defendants allegedly made the statement that Plaintiffs were conflicted with no explanation of Plaintiffs' prior work that caused a conflict. Similarly, the general statements impugning Plaintiffs' performance and honesty imply specific knowledge of Plaintiffs' prior dealings or work that, again, the Lambert Defendants allegedly did not disclose. Nevertheless, because (1) the Lambert Defendants do not clearly and substantively brief an argument that the *specific* allegedly defamatory statements at issue were *each* nonactionable pure opinion and (2) the issue is context-specific and fact-driven, the Court concludes that

[8] The alleged falsity of the Lambert Defendants' defamatory statements is addressed later in this opinion.

this is more appropriate for resolution on a motion for summary judgment after the close of discovery.

In sum, accepting Plaintiffs' allegations as true and with all reasonable inferences construed in their favor, the Court concludes the statements at issue are all capable of defamatory meaning at this stage. Further, the Court concludes that Plaintiffs plausibly allege publication by asserting that the statements were either disseminated (1) "in texts, phone calls, in person, and in other communications" to the Pennsylvania Senate and other of Plaintiffs' business relations; or (2) "in written and verbal communications [to] representatives of" various elected governmental bodies. (*See* ECF No. 1, PageID.8-9).

Moving to the remaining elements of defamation, it is undisputed that the complaint plausibly alleges application of the communications to Plaintiffs, the recipients' understanding of the communications' meaning, and the recipients' understanding that the communication is intended to be applied to Plaintiffs. Next, concerning special harm resulting to Plaintiffs (damages), Plaintiffs specifically allege that "the Pennsylvania Senate terminated its relationship with Plaintiffs" "[a]s a direct result of Lambert [Defendants'] conduct described herein[.]"[9] (ECF No. 1, PageID.9). And Plaintiffs' various defamation claims assert that "Plaintiffs'

---

[9] It can be reasonably inferred from the complaint that this "conduct" refers to Lambert Defendants' alleged publication of defamatory statements.

reputations and brand have been damaged in excess of seventy-five thousand dollars" via humiliation and lost business contracts, among other specified injuries. (*See, e.g.,* ECF No. 1, PageID.11). Accordingly, Plaintiffs' claimed injury goes well beyond labels and conclusions or a mere formulaic recitation of this element, *see Thompson*, 773 F.3d at 750, so the Court rejects the Lambert Defendants' argument that Plaintiffs' damages allegations are too conclusory and thus insufficiently pled.

In contrast, Plaintiffs' general assertions that the allegedly defamatory statements "were and are provably false statements of fact," (*see, e.g.,* ECF No. 1, PageID.12), are more so the type of conclusory allegation that requires some additional supporting facts to plausibly establish the element of falsity. The same is true concerning actual malice and Plaintiffs' generalized allegations that Lambert Defendants "acted with willful misconduct, malice, fraud, wantonness, oppression, and/or entire want of care which would raise the presumption of conscious indifference to consequences, and they specifically intended to cause Plaintiffs harm." (*See, e.g.,* ECF No. 1, PageID.13).

Nevertheless, the Court concludes that the complaint provides sufficient factual matter to reasonably infer these elements. *See State Farm*, 860 F. Supp. 2d at 447 (because there is no "heightened pleading standard for defamation, [the plaintiff] need only satisfy Rule 8, which requires her to plead sufficient factual matter, when accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up).

Notably, *State Farm* advanced to discovery an analogous defamation claim to those here where the specific allegations concerning falsity and intent (i.e., malice) were equally, if not more so, conclusory than Plaintiffs' in this case. *See id.* (allegations sufficient to state a claim for slander under Michigan law where the claimant alleged in relevant part, in addition to describing the general factual background of the claim, "that State Farm knew the accusations 'were false or made with reckless disregard for the truth, knowing that they would cause injury.'").

Moreover, the complaint alleges that the parties worked together without issue on numerous projects until the point when Plaintiffs disclosed no evidence of election fraud in Fulton County and declined Lambert Defendants' request to falsely report otherwise, at which point Lambert Defendants became "furious." (ECF No. 1, PageID.6-8). And this allegedly occurred while Lambert Defendants were promoting claims of election fraud, "us[ing] the public controversy from the 2020 Presidential Election to establish themselves as leading promoters (and profiteers) of election fraud narratives, and earn[ing] substantial income . . . [for] participat[ion] in election fraud investigations and lawsuits." (ECF No. 1, PageID.4).

Accordingly, the complaint as a whole can be fairly read to allege that the Lambert Defendants orchestrated a deliberate defamation campaign against Plaintiffs with the specific intent to dissuade others from doing business with Plaintiffs, not due to legitimate concerns, but in retaliation for Plaintiffs' accurate

report finding no evidence of election fraud and refusal to falsely report otherwise. Under these and other circumstances described below, the Court concludes that the elements of falsity and actual malice, while largely implicit in Plaintiffs' factual allegations, are nonetheless sufficiently supported.

First, it is reasonable to infer, construing the complaint in Plaintiffs' favor, that there was no conflict concerning work involving Fulton County. Not only do Plaintiffs specifically assert within their general allegations (and thus beyond the conclusory allegations within each cause of action) that the Lambert Defendants' statement otherwise was in fact false, it can also be inferred that Plaintiffs would not have been negotiating to perform work for the Pennsylvania Senate if a conflict did indeed exist to preclude such work. Similarly, Plaintiffs include numerous factual allegations describing their expertise and experience in their field of business, and these implicitly support that the alleged disparagements of Plaintiffs' honesty, abilities, and performance were also false. Further, if any of the allegedly defamatory statements were true, the Lambert Defendants presumably would not have worked repeatedly with Plaintiffs on numerous successive projects. Instead, they allegedly stopped working with Plaintiffs only after Plaintiffs, to the Lambert Defendants alleged frustration, failed to falsify a report.

The element of actual malice can likewise be reasonably inferred from the complaint. Specifically, Lambert Defendants' alleged experience working with

Plaintiffs on numerous projects over the course of a year, including the Fulton County work primarily at issue, reasonably should have provided specific knowledge of the falsity (given the allegations at this stage) of each allegedly defamatory statement. And where the overall defamation claims are fairly read to allege retaliation for Plaintiffs' refusal to report false findings of election fraud—which as a matter of common sense would interfere with Lambert Defendants' alleged efforts to promote and earn money from claims of fraud—it can be accepted at this preliminary stage that the Lambert Defendants maliciously published the defamatory statements with at least a reckless disregard for the truth, if not full knowledge of the statements' inaccuracy.

For the forgoing reasons, setting aside for now Lambert Defendants' arguments concerning privilege and the like, the Court concludes that Plaintiffs plausibly establish their claims of defamation.

**C. Sufficiency of Pleadings—Tortious Interference**

Again (*see* footnote 4), it is unclear whether this cause of action arises under Michigan or Pennsylvania law. Specific to the elements necessary to establish tortious interference, the motion cites Pennsylvania law, the response cites Michigan law, and the Lambert Defendants' reply cites both Michigan law and a Sixth Circuit case applying Tennessee law. For essentially the same reasons as stated regarding Plaintiffs' defamation claims, particularly considering the claims for defamation and

tortious interference arise from the same alleged conduct, the Court applies Pennsylvania law here as well. As with the defamation claims, however, the Court's conclusion would be the same under Michigan or Pennsylvania law.

Under Pennsylvania law:

> Tortious interference with prospective or existing contractual relations consists of the following elements:
>
> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Maverick Steel Co., L.L.C. v. Dick Corp.*, 54 A.3d 352, 354-55 (Pa. Super. Ct. 2012).

According to Lambert Defendants, Plaintiffs' allegations fail to state a viable claim of tortious interference because they (1) fail to specifically allege the nature of any contractual or business relation impacted by Lambert Defendants, (2) lack specific facts to support that Lambert Defendants' conduct was in any way unlawful or improper, and (3) fail to demonstrate a clear causal connection between Lambert Defendants' conduct and any harm to Plaintiffs. And Lambert Defendants assert that the defamation and tortious interference claims are "inextricably linked" because the

complaint "fails to demonstrate how the[] statements, even if made, constitute actionable interference with business relationships rather than permissible expressions of opinion or legitimate concerns regarding public matters."[10] (ECF No. 85, PageID.832-35).

Here, Plaintiffs specifically allege that:

> 61. At the time Lambert [Defendants] made the[] [defamatory] statements, Plaintiffs and their partners had finalized negotiations as sub-contractors and contractors for the Pennsylvania Senate to perform forensic analyses of various Pennsylvania elections systems, including Fulton County PA.
>
> 62. As a direct result of Lambert [Defendants'] conduct described herein, the Pennsylvania Senate terminated its relationship with Plaintiffs.

(ECF No. 1, PageID.9). And Plaintiffs further allege within the cause of action for tortious interference that Lambert Defendants' conduct "has caused . . . breaches and disruptions of Plaintiff[s'] relationships and expectancies," and that they have "suffered and will continue to suffer[] damages as a result of [Lambert] Defendants' conduct." (ECF No. 1, PageID.20).

---

[10] The Court already rejected at this stage that Lambert Defendants' alleged statements constitute nonactionable opinion. As for the legitimate discussion of public matters, the allegations at this stage support that the Lambert Defendants maliciously published untruthful, defamatory statements, which the Court views as inconsistent with the Lambert Defendants' contention. And any concerns regarding protected speech and the statements' purported First Amendment character are addressed separately in Section III.D herein.

Given these specific factual assertions, the allegations go well beyond labels and conclusions or a mere formulaic recitation of the elements, *see Thompson*, 773 F.3d at 750, and the Court concludes that Plaintiffs include sufficient factual matter, accepted as true and with all reasonable inferences in Plaintiffs' favor, to plausibly establish both the existence of a prospective contractual relation and the occasioning of legal damage as a result of the defendant's conduct.

The same is true concerning the element of purposeful action by the defendant with the specific intent to cause harm. Again, the complaint as a whole, when accepted as true, can be fairly read to allege that the Lambert Defendants orchestrated a deliberate defamation campaign against Plaintiffs with the specific intent to dissuade others from doing business with Plaintiffs, not due to legitimate concerns, but in retaliation for Plaintiffs' accurate report finding no evidence of election fraud and refusal to falsely report otherwise. And it is accepted at this stage that Lambert Defendants maliciously published the allegedly untruthful, defamatory statements with the specific intent to dissuade the Pennsylvania Senate from using Plaintiffs' services. Given these circumstances, Plaintiffs include sufficient factual matter to establish at this stage that the Lambert Defendants intentionally acted to harm Plaintiffs' business interests. The Court concludes that Plaintiffs plausibly establish their cause of action for tortious interference.

**D. First Amendment Defenses—Libel, Slander and Tortious Interference**

As stated, Lambert Defendants argue that the statements underlying both the defamation and tortious interference claims, given their First Amendment character, are privileged and/or immunized under the *Noerr-Pennington* doctrine. (ECF No. 85, PageID.835-39). The Court disagrees, at least based on the allegations of the complaint at this early stage.

Pursuant to the First Amendment's Petition Clause, individuals have a qualified privilege when petitioning government officials unless they disseminate falsehoods with malice. *Wawa, Inc. v. Alexander J. Litwornia & Assocs.*, 817 A.2d 543, 545-46 (Pa. Super. Ct. 2003). Relatedly, the *Noerr-Pennington* doctrine also immunizes from liability First Amendment petitioning activity, regardless of motivation, unless the activity "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a[nother]." *Id.* at 546-47 (citation omitted).

However, the application of both qualified privilege and the *Noerr-Pennington* doctrine are affirmative defenses typically inappropriate for resolution on the pleadings unless affirmatively established by the complaint itself. *See Everett v. UAW Local 699*, 594 F. Supp. 3d 861, 865 (E.D. Mich. 2022) ("it is well settled that qualified privilege is an affirmative defense"); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 840 (E.D. Mich. 1999) ("the *Noerr-Pennington* doctrine

constitutes a defense"); *Middleton v. United Church of Christ Bd.*, 483 F. Supp. 3d 489, 496 (N.D. Oh. 2020) ("a Rule 12(b)(6) motion to dismiss is not the proper vehicle to assert an affirmative defense" unless "the defense clearly appears on the face of the [complaint]") (citation omitted; alteration in original); *see also Wecht v. PG Pub. Co.*, 353 Pa. Super. 493, 496 (Pa. Super. Ct. 1986) ("it is well established that the defense of qualified privilege must be raised by new matter and not by preliminary objection [at the pleadings stage]"); *Chicarella v. Passant*, 343 Pa. Super. 330, 337 (Pa. Super. Ct. 1985) ("Although the defendant in a defamation action ordinarily bears the burden of establishing a privilege to publish defamatory matter, where a conditional privilege is evidenced, as here, in the plaintiff's complaint, the plaintiff will be nonsuited unless he can prove abuse of the privilege.") (citations omitted).

Here, because neither defense is clearly established from the face of the complaint alone, the Court concludes that they are not properly before the Court at this preliminary stage. *Contra Middleton*, 483 F. Supp. 3d at 496 (concluding the opposite where "the Complaint clearly establishes that Middleton was a ministerial employee" and "Middleton does not challenge Defendants' invocation of the ministerial exception"). Rather, the complaint sufficiently establishes falsity and actual malice, and relatedly that Lambert Defendants acted with the improper

purpose to interfere with Plaintiffs' business relationships, to defeat at this stage any claim of qualified privilege or invocation of the *Noerr-Pennington* doctrine.

Most importantly, the complaint as a whole can be fairly read to allege that the Lambert Defendants orchestrated a deliberate defamation campaign against Plaintiffs with the specific intent to dissuade others from doing business with Plaintiffs, not due to legitimate concerns, but in retaliation for Plaintiffs' accurate report finding no evidence of election fraud and refusal to report false findings of fraud. And it is accepted at this stage that the Lambert Defendants maliciously published the allegedly untruthful, defamatory statements with the specific intent to dissuade the Pennsylvania Senate from using Plaintiffs' services. Again, the statements allegedly were specifically intended to deter others—and did in fact deter the Pennsylvania Senate—from using Plaintiffs' services. Given these circumstances, dismissal based on privilege or *Noerr-Pennington* immunity is unwarranted at this time. *See Wawa*, 817 A.2d at 548. ("[The] pleadings paint Appellees as effectuating governmental action directed at impeding the business affairs of a competitor. Such conduct is not protected by the Petition Clause and triggers the 'sham' exception to the *Noerr-Pennington* doctrine.").

**E. Breach of Contract, Promissory Estoppel, and Unjust Enrichment**

As an initial matter, the parties' briefing with respect to Plaintiffs' contract and related quasi-contract claims largely concerns the availability of alternative

pleadings and claims. Both sides cite Sixth Circuit cases purportedly addressing this issue, but neither provides the specific elements needed to establish these state-law claims in either Michigan or Pennsylvania. However, both sides implicitly recognize the application of Pennsylvania law by addressing whether the allegations include the essential contract terms at issue, which is required in Pennsylvania but not Michigan.

Acknowledging that the essential elements of Plaintiffs' contract and quasi-contract claims are for the most part materially the same in both states, relying on both sides' implicit reference to Pennsylvania law, and for the sake of consistency after having applied Pennsylvania law to Plaintiffs' other claims, the Court here cites Pennsylvania law where necessary to resolve the parties' disputes. Again, however, the Court's conclusions would be the same under Michigan or Pennsylvania law.

**1. Alternate Pleadings**

Lambert Defendants primarily argue that Plaintiffs cannot simultaneously assert claims of breach of contract, promissory estoppel, and unjust enrichment because the latter two types of claims are available only in the absence of an express contract, Plaintiffs allege the existence of a contract, and all three claims arise from the same promise(s) and conduct. They relatedly argue that the breach of contract claim is defective because Plaintiffs allege that the existence of a contract is in dispute. (ECF No. 85, PageID.840-42). The Court disagrees.

"Under Pennsylvania law, a plaintiff may not recover under a theory of unjust enrichment if the parties' relationship is governed by a[n express] contract." *Brezinski v. Widener Univ.*, 582 F. Supp. 3d 257, 267 (E.D. Pa. 2022). Relatedly, "[p]romissory estoppel allows the court to enforce a party's promise that is unsupported by consideration," and "relief under a promissory estoppel claim is unwarranted" if the parties formed an enforceable contract. *Carlson v. Arnot-Ogden Memorial Hosp.*, 918 F.2d 411, 416 (3rd Cir. 1990). But "the Federal Rules of Civil Procedure permit such claims to be pleaded in the alternative where . . . the existence or applicability of a contract is in dispute." *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301, 315-16 (3rd Cir. 2023); *see also Brezinski*, 582 F. Supp. 3d at 267 ("a party may plead alternative theories of breach of contract and unjust enrichment when there is a dispute about the existence or validity of the contract in question"); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Where the parties here do not agree that a valid and enforceable contract exists, the Court permits Plaintiffs' alternative pleadings. If the Lambert Defendants later concede this issue, however, or if factual development resolves the issue at a later stage of the case, the Court is prepared to reject the alternate claims accordingly.

Lambert Defendants also argue that certain elements of the contract and quasi-contract claim are insufficiently pled. (ECF No. 85, PageID.840-42). The Court disagrees.

**2. Sufficiency—Breach of Contract**

"To successfully maintain a cause of action for breach of contract[,] the plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005). The second and third elements are undisputed here, so the Court will decide only whether Plaintiffs adequately allege the existence of a contract, including its essential terms. They have done so.

Plaintiffs specifically allege that the parties "entered into an agreement for Plaintiffs to perform a forensic analysis of Fulton County, Pennsylvania's elections systems, in exchange for $200,000," and that Lambert defendants "later expanded the scope of the Fulton County Project to include additional cyber analysis functions, such as determining the system hardening state and code analysis, for an additional fee of $350,000, owed to Plaintiffs." And Plaintiffs assert that their work under this agreement was expected to be completed within one year. (ECF No. 1, PageID.6-7).

This is more than enough factual detail to plausibly establish the first and only contested element of Plaintiffs' breach of contract claim. And Plaintiffs sufficiently allege the essential terms at issue by providing specific facts concerning the time and

manner of performance, as well as the price and consideration exchanged. The Court therefore declines to dismiss the claim as insufficiently pled.

**3. Sufficiency—Promissory Estoppel**

To make a claim for promissory estoppel:

> the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000).

Plaintiffs satisfy each element here (assuming for the purpose of Plaintiffs' alternately pled counts that the alleged agreement does not rise to the level of an enforceable contract). First, the complaint plausibly alleges that the Lambert Defendants promised to pay Plaintiffs at total of $550,000 in exchange for Plaintiffs' services working on the Fulton County project, and Lambert Defendants should have reasonably expected the promise of such significant payment to induce Plaintiffs to undertake the requested forensic analysis. And Plaintiffs allege that they did perform this work, with it reasonable to infer they did so in reliance on the promise of substantial payment. But the Lambert Defendants allegedly refused to pay the agreed-to amount due. It would certainly be unjust for Plaintiffs to go unpaid for the services they performed. The Court therefore declines to dismiss the promissory estoppel claim as insufficiently pled.

**4. Sufficiency—Unjust Enrichment**

To state a claim for unjust enrichment, a plaintiff must allege that (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated that benefit; and (3) the defendant retained the benefit under circumstances where it would be inequitable to do so without payment of value. *WFIC, LLC v. LaBarre*, 148 A.3d 812, 819 (Pa. Super. Ct. 2016). Plaintiffs have done so.

Again, Plaintiffs allege that they performed the forensic analysis of Fulton County's election systems as requested by the Lambert Defendants. And according to the complaint, Plaintiffs produced their report to the Lambert Defendants in June 2022. The Court concludes that these facts plausibly establish Plaintiffs' conference and the Lambert Defendants' appreciation of a specific benefit—Plaintiffs' work and ultimate report concerning Fulton County's elections systems. And it would certainly be inequitable for Plaintiffs to go unpaid for the services they performed. Accordingly, Plaintiffs have submitted sufficient factual matter to warrant discovery on the unjust enrichment claim, and the Court therefore declines to dismiss the claim as insufficiently pled.

* * *

For the reasons given, IT IS **ORDERED** the Lambert Defendants' motion to dismiss (ECF No. 85) is **DENIED**.

**SO ORDERED**.

Dated: September 4, 2026

s/Robert J. White
Robert J. White
United States District Judge